ROBERT THOBURN, ET AL.,[1] PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 39546-87—39554-87.     Filed August 13, 1990.

---

[1] Cases of the following petitioners have been consolidated herein: Richard W. Cunningham, docket No. 39547-87; Robert C. Slaton, docket No. 39548-87; John W. Andrews, docket No. 39549-87; Robert H. McCollough, docket No. 39550-87; Donald T. Quick, docket No. 39551-87; Homer Knizley, Jr., docket No. 39552-87; Melvin C. Dace, docket No. 39553-87; and Mark V. Barrow, docket No. 39554-87. Except as otherwise noted, for convenience we will refer to the foregoing consolidated cases collectively as the "instant case."

*Samuel C. Ullman* and *John Tenenholtz,* for the petition-ers.

*Roslyn D. Grand* and *David Albert Mustone,* for the respondent.

## OPINION

WELLS, *Judge:* The instant case is before the Court on two motions filed by petitioners. The first motion is entitled motion to dismiss for lack of subject matter jurisdiction, or in the alternative, limit the amount of respondent's determination. The second motion is entitled motion to dismiss for lack of subject matter jurisdiction.[2]

The instant case concerns petitioners' liability for section 4975[3] excise taxes because of loans made to them by a qualified profit-sharing plan.[4] Petitioners' first motion asks

---

[2] Although petitioners' motion suggests that we lack jurisdiction over years closed by the applicable limitations period, we have jurisdiction over such years, as the statute of limitations is an affirmative defense that must be pleaded. Rule 39; *Shopsin v. Commissioner,* T.C. Memo. 1984-151. Summary judgment would be appropriate with respect to barred years, and we therefore treat petitioners' motion as one for partial summary judgment. *Blount v. Commissioner,* 86 T.C. 383 (1986).

[3] Unless otherwise indicated, all section and Code references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure (effective July 1, 1990).

[4] The deficiencies determined by respondent are set forth in the appendix to this opinion.

that we dismiss the instant case or, alternatively, limit respondent's determinations because of (1) insufficient notice from respondent to the Department of Labor (DOL) of respondent's intent to determine the deficiencies and (2) a settlement agreement between the profit-sharing plan and DOL. Petitioners' second motion asks that we dismiss the instant case as to those years that they contend are closed by the applicable period of limitations.

## Factual Background

The parties have stipulated certain facts. The stipulations of fact and attached exhibits are hereby incorporated by reference.

From 1980 through 1985, petitioners were employees of Gainesville Medical Group—Andrews & Associates, P.A. (GMG), and were participants in GMG's qualified profit-sharing plan (the plan).[5]

From 1980 through 1985, petitioners borrowed money from the plan (sometimes hereinafter collectively referred to as the plan loans). The plan charged 10-percent interest for plan loans made in 1980 and 1981 and 8-percent interest for plan loans made from 1982 through 1985.

In November 1984, Mr. Leston Seaton, a revenue agent, began an examination of the plan. On January 28, 1985, Mr. Seaton learned that DOL was conducting its own investigation of the plan. Mr. Seaton informed his supervisor, Mr. Jackie Jefferson, of the DOL investigation, and Mr. Jefferson instructed Mr. Seaton to suspend respondent's investigation.

Beginning on January 29, 1985, Mr. Seaton corresponded with Mr. Donald Trimas of DOL regarding the DOL investigation of the plan. On February 1, 1985, Mr. Trimas informed Mr. Seaton of loans made by the plan that Mr. Trimas believed could warrant legal action by DOL.

On July 11, 1985, Mr. Jefferson told Mr. Seaton that respondent's investigation would have to resume unless DOL submitted a written request that respondent withhold action. On September 11, 1985, after further correspondence

---

[5]Petitioner Robert C. Slaton was not a participant during the fiscal years of the plan ending Sept. 30, 1980, and Sept. 30, 1981.

between respondent and DOL, Mr. Seaton resumed his investigation of the plan.

On November 12, 1985, Mr. Seaton received information from Mr. Trimas concerning loans made by the plan to GMG employees. On January 24, 1986, Mr. Seaton completed his examination and submitted a written report for internal review. Between August 1986 and October 28, 1986, Mr. Seaton revised his report, incorporating additional information from DOL, and then resubmitted the report for internal review.

In a letter to counsel for petitioners dated December 9, 1986 (the first DOL letter), Mr. Howard Marsh, an area director for DOL, outlined the terms of a proposed settlement of plan violations. The proposed settlement required that (1) "Key Employees" assign their "vested benefits" as security for plan loans, (2) "existing notes" be amortized over 17 years, (3) notes for loans made from 1982 through 1985 provide for an additional 2-percent interest (10- rather than 8-percent interest), with retroactive accrual of such interest added to the principal balances to be amortized over 17 years, and (4) participants be allowed to manage the investment of their own plan accounts. The first DOL letter also contained the following disclaimer: "Our decision to conclude and accept your proposed settlement cannot bind any other governmental agency, such as I.R.S., nor preclude such agencies from taking any action they deem appropriate."

On January 8, 1987, respondent issued "30-day letters" to petitioners advising them of respondent's intent to determine section 4975 excise tax deficiencies because of the plan loans. Petitioners filed protests, which were considered by Mr. Dennis Papadeas, an appeals officer in the Atlanta Appeals Office.

In a letter dated June 12, 1987 (the second DOL letter), and addressed to the plan's trustees, Mr. Marsh of DOL confirmed the settlement of plan violations (referred to herein as the DOL settlement). The second DOL letter acknowledged that the plan trustees had taken the remedial measures set forth in the first DOL letter. The second DOL letter referred to a "correction of prohibited loans amounting to $2,070,312 as of 12/31/86," but contained a disclaimer

similar to that in the first DOL letter, cautioning, "The Department commits only itself and cannot in any way restrain any other * * * governmental agency from taking any further action it may deem appropriate with respect to these or other matters."

On September 25, 1987, Mr. Papadeas sent a letter (the IRS letter) to DOL concerning the plan. The IRS letter stated, "the above referenced case has been referred to us by the Atlanta Key District, EP/EO Division" and requested that DOL review its records and "ascertain if there is any Department of Labor involvement in the above referenced case." The IRS letter asked for a response within 30 calendar days.

The IRS letter conformed to a form letter (the form letter) set forth in appendix D to an agreement between respondent and DOL entitled, "Agreement Between the Internal Revenue Service and the Department of Labor for the Coordination of Examination and Litigation Activities Involving Employee Benefit Plans" (the IRS-DOL agreement). In pertinent part, the IRS-DOL agreement states:

III. *IRS Appeals Office Procedures*

The following procedures apply to all cases received by IRS Appeals Offices involving examinations of employee benefit plans * * *.

A. The Chief, Appeals Office (or designee) will complete and send the Form letter in Appendix D to the appropriate DOL Regional Office as listed in Appendix E. When applicable, the form letter will be considered the notice required by sections 4971(d) and 4975(h) of the Internal Revenue Code.

B. The Appeals Office will not take final action to settle the case, concede any Government issue, enter into a closing agreement with any taxpayer, issue any notice of deficiency with respect to taxes under section 4971 or 4975 that are not in jeopardy, or proceed with any action to revoke the favorable determination or qualification letter of any plan prior to the earlier of the date when the Appeals Office receives a response from DOL or 30 days after the date of the Appeals Office's letter to DOL.

C. DOL will, within 30 calendar days of the date of the letter from the Appeals Office, reply to the Appeals Office in writing if DOL is taking any action concerning the referred case. If DOL is taking action with respect to the case, the Appeals Office will coordinate with DOL before taking any of the actions described in section B. of this Part.

As noted, the IRS letter conformed to the form letter. The IRS letter, however, was sent to a Miami office of DOL,

although appendix E of the IRS-DOL agreement indicates that it should have been sent to the DOL Regional Office in Atlanta.

The IRS-DOL agreement had been amended effective September 1, 1987, prior to the date of the IRS letter. The amended version of the IRS-DOL agreement (the IRS-DOL amended agreement) contains the following pertinent provisions:

III. *IRS Appeals Office Procedures*

The following procedures apply to all cases received by IRS Appeals Offices involving examinations of employee benefit plans * * *.

A. The Chief, Appeals Office (or designee) will complete and send the Form letter in Appendix E to the Area Director's/District Supervisor's Office as listed in Appendix A. To ensure that notice has been given to DOL as required by Sections 4971(d) and 4975(h) of the Internal Revenue Code, the Appeals Office shall follow the procedures of B. and C. of this part.

B. The Appeals Office will not take final action to settle the case, concede any Government issue, enter into a closing agreement with any taxpayer, issue any notice of deficiency with respect to taxes under section 4971 or 4975 that are not in jeopardy, or proceed with any action to revoke the favorable determination or qualification letter of any plan prior to the earlier of the date when the Appeals Office receives a response from PWBA [Pension and Welfare Benefits Administration of DOL] or 60 days after the date of the Appeals Office's letter to PWBA.

C. PWBA will, within 60 days of the date of the letter from the Appeals Office, reply to the Appeals Office in writing if PWBA is taking any action concerning the referred case. If PWBA is taking action with respect to the case, the Appeals Office will coordinate with PWBA before taking any of the actions described in Section B. of this Part.

Appendix A of the IRS-DOL amended agreement indicates that the IRS letter was properly sent to the appropriate DOL office in Miami. The IRS letter, however, differed from the form (the amended form letter) set forth in appendix E of the IRS-DOL amended agreement in two respects. While the IRS letter referred to "Procedures for Coordination of Examination and Litigation Activities," the amended form letter refers to a "Coordination Agreement." Moreover, while the IRS letter gave DOL 30 days to respond, the amended form letter requests a response within 60 days.

On December 1, 1987, respondent issued notices of deficiency to petitioners. The statutory notices determine

section 4975 excise tax deficiencies based upon the plan loans.

The plan filed information returns for its fiscal years ending September 30 of 1980 through 1985, prior to the due dates of those returns (April 30 of the succeeding years).[6] The Form 5500-C used by the plan for the year ending September 30, 1980, asks, "Did any non-exempt transaction, involving plan assets, involve a person known to be a party-in-interest?" The Form 5500-R used by the plan for the year ending September 30, 1981, asks, "Fiduciary information during this plan year: * * * Party-in-interest information: * * * Did the plan lend assets to, borrow from, or guarantee any indebtedness of a party-in-interest?" The Form 5500-C used by the plan for the year ending September 30, 1982, asks, "Since the end of the plan year covered by the last return/report * * * Other than transactions described in the exceptions outlined in the instructions, were there any transactions, directly or indirectly, between the plan and a party-in-interest?" Each of the foregoing questions was answered "no." The plan return for the year ending September 30, 1982, also asked "What percentage of plan assets are loaned to a party-in-interest?" The space provided for an answer was left blank.

Between November 24 and December 5, 1986, petitioners signed Forms 872 purporting to extend to April 30, 1988, the period for assessing excise taxes for taxable years 1980 and 1983.[7]

*Section 4975 Excise Taxes*

Section 4975(a) provides as follows:

SEC. 4975(a). INITIAL TAXES ON DISQUALIFIED PERSON.— There is hereby imposed a tax on each prohibited transaction. The rate of tax shall be equal to 5 percent of the amount involved with respect to the prohibited transaction for each year (or part thereof) in the taxable period. The tax imposed by this subsection shall be paid by any disqualified person who participates in the prohibited transaction (other than a fiduciary acting only as such).

---

[6]See Form 5500-C (1979). Sec. 301.6058-1(a)(4), Proced. & Admin. Regs., provides that the information return of a plan required by sec. 6058(a) shall be filed at the time required by the prescribed form and related instructions.

[7]The Form 872 signed by petitioner Robert C. Slaton purports to extend the period of limitations for 1983 only.

A loan between a plan and a disqualified person is a prohibited transaction. Sec. 4975(c)(1)(B). Petitioners do not argue that they are not disqualified persons or that the plan is not a plan within the coverage of section 4975. See sec. 4975(e)(1) and (2) ("plan" and "disqualified person" defined).

The "taxable period" extends from the date of the prohibited transaction to the earlier of (1) the date respondent mails a statutory notice determining a deficiency in section 4975(a) excise tax, (2) the date such tax is assessed, or (3) the date the prohibited transaction is "corrected." Sec. 4975(f)(2). The tax is imposed in each year within the taxable period. Sec. 4975(a).

Although section 4975 contains definitions of "the amount involved" and "correct" (section 4975(f)(4) and (5)), regulations more specifically define the terms for various types of prohibited transactions. Section 141.4975-13, Temporary Excise Tax Regs., 41 Fed. Reg. 32890 (Aug. 5, 1976) and 51 Fed. Reg. 16305 (May 2, 1986), provides that until permanent regulations defining those terms are promulgated under section 4975, section 53.4941(e)-1 of the Foundation Excise Tax Regulations defines those terms for purposes of section 4975. The temporary regulation was promulgated on August 5, 1976, and amended May 1, 1986, and has not been replaced by permanent regulations.

With respect to loans, the amount involved is defined in section 53.4941(e)-1(b)(2)(ii), Foundation Excise Tax Regs., as follows: "Where the use of money or other property is involved, the amount involved shall be the greater of the amount paid for such use or the fair market value of such use for the period for which the money or other property is used." Thus, if the prohibited transaction is a loan, the amount involved is the greater of interest actually charged or fair market interest. Sec. 53.4941(e)-1(b)(4), example 4, Foundation Excise Tax Regs.

Section 4975(f)(5) defines "correct" as follows:

(5) CORRECTION.—The terms "correction" and "correct" mean, with respect to a prohibited transaction, undoing the transaction to the extent possible, but in any case placing the plan in a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards.

Regulations provide more specific guidance. Section 53.4941(e)-1(c)(4), Foundation Excise Tax Regs., provides in part as follows:

(4) *Use of property by a disqualified person.* (i) In the case of the use by a disqualified person of property owned by a private foundation, undoing the transaction includes, but is not limited to, terminating the use of such property. In addition to termination, the disqualified person must pay the foundation—

(a) The excess (if any) of the fair market value of the use of the property over the amount paid by the disqualified person for such use until such termination, and

(b) The excess (if any) of the amount which would have been paid by the disqualified person for the use of the property on or after the date of such termination, for the period such disqualified person would have used the property (without regard to any further extensions or renewals of such period) if such termination had not occurred, over the fair market value of such use for such period.

Further, the flush language of the foregoing regulation specifies that for purposes of calculating the amount to be paid pursuant to clause (a), the fair market interest rate for the use of money shall be the higher of the rate on the date of the prohibited transaction or the rate on the date of correction.

If a prohibited transaction is not corrected within the taxable period, disqualified persons participating in the prohibited transaction become liable for a second-tier tax equal to 100 percent of the amount involved. Sec. 4975(b).

*Sufficiency of Notice to DOL*

Petitioners first argue that the instant case must be dismissed because respondent failed to comply with section 4975(h), which provides as follows:

SEC. 4975(h). NOTIFICATION OF SECRETARY OF LABOR.—Before sending a notice of deficiency with respect to the tax imposed by subsection (a) or (b), the Secretary shall notify the Secretary of Labor and provide him a reasonable opportunity to obtain a correction of the prohibited transaction or to comment on the imposition of such tax.[8]

---

[8]Title 29 U.S.C. sec. 1203(a) (1982) contains a similar requirement. It states:

Unless the Secretary of the Treasury finds that the collection of a tax is in jeopardy, in carrying out the provisions of section 4975 of Title 26 (relating to tax on prohibited transactions) the Secretary of the Treasury shall, in accordance with the provisions of subsection (h) of such section, notify the Secretary of Labor before sending a notice of deficiency with respect to the tax imposed by subsection (a) or (b) of such section, and, in

Because we find that respondent satisfied the notice requirement of section 4975(h) in the instant case, we do not need to decide whether respondent's failure to provide DOL with such notice deprives the statutory notices of deficiency of their validity, thereby requiring dismissal. Cf. *Stamm International Corp. v. Commissioner*, 84 T.C. 248, 252 (1985).

The IRS letter conforms to the form letter, and the IRS-DOL agreement expressly provides that such letter "will be considered the notice required by sections * * * 4975(h) of the Internal Revenue Code." Thus, both respondent and DOL recognized the IRS letter as a harbinger of excise tax deficiency determinations and a request that DOL respond if it intended to become involved.

We do not consider material the fact that the IRS-DOL agreement was amended and that the IRS letter did not conform in exact detail to the amended form letter. The discrepancies are insignificant and do not detract from the fact that respondent notified DOL of his intent to determine excise tax deficiencies and DOL was given an opportunity to become involved. The statute requires no more. Significantly, the IRS letter was sent to the DOL office prescribed by the amended IRS-DOL agreement. Although the IRS letter requests a response within 30 days, while the amended agreement requires 60 days' notice, respondent did not issue statutory notices until December 1, 1987, more than 60 days after the date of the letter.

Moreover, that respondent did not comply, in exact detail, with his own internal operating procedures does not affect the resolution of the issue presented by petitioners' motion, as such procedures do not confer substantive rights upon taxpayers. Cf. *Vallone v. Commissioner*, 88 T.C. 794, 808 (1987) (failure to comply with Internal Revenue Manual procedure for obtaining extension of period of limitation did not necessitate suppression of evidence obtained after extension obtained); *Epstein v. Commissioner*, T.C. Memo.

accordance with the provisions of subsection (h) of such section, afford the Secretary an opportunity to comment on the imposition of the tax in any case. The Secretary of the Treasury shall have authority to waive the imposition of the tax imposed under section 4975(b) in appropriate cases. Upon receiving a written request from the Secretary of Labor or from the Pension Benefit Guaranty Corporation, the Secretary of the Treasury shall cause an investigation to be carried out with respect to whether the tax imposed by section 4975 of Title 26 should be applied to any person referred to in the request.

1989-498 (failure to follow procedures set forth in Internal Revenue Manual did not invalidate statutory notice); *First Federal Savings & Loan Association of Pittsburgh v. Goldman*, 644 F. Supp. 101 (W.D. Pa. 1986) (failure to comply with Internal Revenue Manual procedure for levying upon Individual Retirement Accounts did not invalidate levy).

Accordingly, we hold petitioners are not entitled to dismissal upon the grounds that respondent violated section 4975(h).

## Effect of DOL Settlement

Petitioners next argue that the DOL settlement requires that we "limit" respondent's determination.[9] Specifically, petitioners argue that the DOL settlement impacts respondent's ability to determine the excise tax deficiencies in three ways. First, petitioners contend that the DOL settlement limits the "amounts involved" in the prohibited transactions because it fixes 10 percent as the fair market interest rate for the loans (as noted above, the amount involved in a prohibited loan transaction is the greater of fair market interest or contract interest; respondent's determination is based on alleged fair market interest rates ranging from 13 percent in 1984 to 23.5 percent in 1981). Second, petitioners contend that because the DOL settlement fixes 10 percent as the fair market interest rate for plan loans, loans made in 1980 and 1981 at that rate were not prohibited transactions.[10] Finally, petitioners contend that the DOL settlement requires that the amounts they must pay to the plan in order to "correct" the prohibited transactions be based upon a fair market interest rate of 10 percent.[11]

---

[9]Because our Rules do not recognize a motion to limit a deficiency determination, petitioners' request should have been cast as a motion for partial summary judgment under Rule 121(c), and we consider the request as such. *Roszkos v. Commissioner*, 87 T.C. 1255, 1260 n. 6 (1986), vacated and remanded on other grounds 850 F.2d 514 (9th Cir. 1988).

[10]Petitioners inexplicably ignore the other requirements that must be satisfied before a loan from a plan to a disqualified person will qualify as exempt from sec. 4975, e.g., provision of adequate security. Sec. 4975(d).

[11]In parts of their moving papers, petitioners also argue that the DOL settlement itself constitutes a "correction." Because we hold that the DOL settlement does not fix 10 percent as the fair market interest rate for the plan loans, we need not address whether payment of fair market interest constitutes a correction.

We reject all of petitioners' contentions because the DOL settlement, by its express terms, does not purport to limit in any manner respondent's authority to determine excise tax deficiencies attributable to the prohibited loan transactions.

The DOL settlement is a contract, and its effect should be governed by the principles applicable to contracts in general. *Donovan v. Robbins*, 752 F.2d 1170, 1179 (7th Cir. 1985) (settlement agreement between DOL and employee benefit fund could not bind other defendants in DOL action against fund). Specifically, we must interpret the settlement so as to give effect to the objectively manifested intent of the parties and not to further any "unexpressed intent." 4 S. Williston, Contracts, sec. 600A, p. 287 (3d ed. 1961); cf. *Kronish v. Commissioner*, 90 T.C. 684, 693 (1988) (whether or not parties agreed to extend period of limitations determined by reference to "objective manifestation of mutual assent," not "secret intentions"). Both the first DOL letter and the second DOL letter state in clear and unambiguous language that the DOL settlement will not bind respondent. Petitioners understandably ignore that language.

Further, petitioners have offered no evidence of a contrary intention, assuming such evidence would be admissable and relevant given the language in the letters. See 4 S. Williston, *supra*, sec. 631, pp. 948-949; *Novotny v. Commissioner*, 93 T.C. 12, 19 (1989); *Estate of Craft v. Commissioner*, 68 T.C. 249, 259 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979) (when parties reduce their agreement to an integrated writing, parol evidence rule may prohibit use of extrinsic evidence tending to contradict or vary writing).

In sum, we hold that by entering into the DOL settlement, DOL and the plan trustees did not purport to settle, in whole or in part, the section 4975 excise tax issues raised by the plan loans. We do not mean to suggest, by our holding, that the DOL settlement is irrelevant to any of those issues. For example, the DOL settlement, if admissable at trial, might be some evidence relevant in deciding the issue of a fair market interest rate. We do hold, however, that the DOL settlement does not prevent respondent from

determining section 4975 excise taxes against petitioners. Accordingly, petitioners' first motion will be denied.

## Period of Limitations

Petitioners' second motion asks that we dismiss deficiencies for taxable years 1980, 1981, and 1982 on the grounds that assessments for such years are barred by the applicable period of limitations.

Section 6501(a) supplies the general rule which requires that a tax be assessed "within 3 years after the return was filed." A return filed prior to its due date is deemed filed on the due date. Sec. 6501(b)(1).

Section 6501(l)(1) provides that the return of specified excise taxes, including those imposed by section 4975, shall be the return of "the private foundation, plan, trust, or other organization * * * for the year in which the act * * * giving rise to liability for such tax occurred."

Similarly, section 301.6501(n)-1(a), Proced. & Admin. Regs., provides that for purposes of section 6501, the return of a plan or trust "with respect to any act giving rise to a tax imposed by * * * section 4975" shall be considered to be the return of those disqualified persons required to report such tax.

Thus, in the instant case, the general 3-year period of limitations would bar assessment of section 4975 excise taxes for prohibited transactions occurring through September 30, 1983, as illustrated by the following table:

| Plan year ending[12] | Due date of plan return | 3-year period expires | Statutory notice issued |
|---|---|---|---|
| 9/30/80 | 4/30/81 | 4/30/84 | - - - |
| 9/30/81 | 4/30/82 | 4/30/85 | - - - |
| 9/30/82 | 4/30/83 | 4/30/86 | - - - |
| 9/30/83 | 4/30/84 | 4/30/87 | 12/1/87 |
| 9/30/84 | 4/30/85 | 4/30/88 | - - - |
| 9/30/85 | 4/30/86 | 4/30/89 | - - - |

[12]The parties stipulated that the period of limitations for calendar years (rather than the plan's fiscal years) would commence on Apr. 30 of the succeeding years. We view their stipulation as contrary to the plain import of the statute and accordingly disregard it. The effect of the stipulation is to curtail the limitations period for October, November, and December of each of the years in issue, and there is no authority permitting the shortening of a limitations period. We are not bound by stipulations of law. *King v. United States,* 641 F.2d 253, 258-259 (5th Cir. 1981); *Greene v. Commissioner,* 85 T.C. 1024, 1026 n. 3 (1985); *Albertson's, Inc. v. Commissioner,* T.C. Memo. 1990-153.

Prior to expiration of the general 3-year period of limitations, however, a taxpayer and the Commissioner may agree to extend the period of limitations. Sec. 6501(c)(4). Between November 24 and December 5, 1986, petitioners signed Forms 872 purporting to extend the period for taxable years 1980 and 1983.[13] Accordingly, petitioners do not contend that taxable year 1983 is closed. Because they signed the Forms 872 after expiration of the 3-year limitations period for taxable year 1980, however, petitioners contend that taxable year 1980, as well as taxable years 1981 and 1982, are closed.

Respondent contends that those years are not closed because section 6501(e)(3), providing for a 6-year period of limitations, applies to petitioners' excise tax liabilities.

In pertinent part, section 6501(e)(3) provides as follows:

(3) EXCISE TAXES.—In the case of a return of a tax imposed under a provision of subtitle D [miscellaneous excise taxes], if the return omits an amount of such tax properly includible thereon which exceeds 25 percent of the amount of such tax reported thereon, the tax may be assessed, * * * at any time within 6 years after the return is filed. * * *

Section 6501(e)(3) also provides that an amount of section 4975 excise tax is not considered omitted if the return discloses the transaction which gives rise to liability for that amount.

Respondent also cites section 301.6501(e)-1(c)(4), Proced. & Admin. Regs., which provides in pertinent part as follows:

If a taxpayer fails to so disclose an item in its return (or in a schedule or statement attached thereto), the tax arising from any transaction not so disclosed may be assessed, * * * at any time within 6 years after the return was filed. * * * The applicable return for the tax under section 4975 is the return filed by the plan used to report the act giving rise to the tax.

If, as respondent contends, the 6-year period of limitations contained in section 6501(e)(3) applies to petitioners' excise tax liabilities, then all years in issue remain open, as illustrated by the following table:

---

[13]As noted, petitioner Robert C. Slaton's Form 872 affects only taxable year 1983.

| Plan year ending | Due date of plan return | 6-year period expires | Statutory notice issued |
|---|---|---|---|
| 9/30/80 | 4/30/81 | [1]4/30/87 | 12/1/87 |
| 9/30/81 | 4/30/82 | 4/30/88 | - - - |
| 9/30/82 | 4/30/83 | 4/30/89 | - - - |
| 9/30/83 | 4/30/84 | 4/30/90 | - - - |
| 9/30/84 | 4/30/85 | 4/30/91 | - - - |
| 9/30/85 | 4/30/86 | 4/30/92 | - - - |

[1]Year remains open by agreement entered into prior to expiration of period of limitations.

In sum, petitioners' second motion requires us to decide whether the 3- or 6-year period of limitations applies to petitioners' excise tax liabilities.

Petitioners point out that the 6-year period of limitations is inapplicable unless "the return omits an amount of such [excise] tax properly includible thereon" (section 6501(e)(3)) and that pursuant to section 6501(l)(1), "the return referred to *in this section* [section 6501] shall be the return filed by the * * * plan." (Emphasis supplied.) Petitioners contend that because no amount of excise tax is "properly includible" on the Form 5500 series returns filed by the plan during the relevant period, the 6-year period of limitations is inapplicable to their excise tax liabilities.

In essence, petitioners argue that the 6-year period of limitations cannot apply to their excise tax liabilities because the Form 5500 series returns used by the plan do not provide for the calculation of those liabilities. We do not agree.

Section 6501(e)(3) is a statute of limitations. In *Badaracco v. Commissioner*, 464 U.S. 386, 391-392 (1984), the Supreme Court set forth the following standard for interpreting a statute of limitations:

Our task here is to determine the proper construction of the statute of limitations Congress has written for tax assessments. This Court long ago pronounced the standard: "Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *E.I. Dupont de Nemours & Co. v. Davis,* 264 U.S. 456, 462, * * * (1924). See also *Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 249, * * * (1930). More recently, Judge Roney, in speaking for the former Fifth Circuit, has observed that "limitations statutes barring the collection of taxes otherwise due and unpaid are

strictly construed in favor of the Government." *Lucia v. United States,* 474 F.2d 565, 570 (1973).

With the foregoing rule of construction in mind, we hold that the 6-year period of limitations of section 6501(e)(3) applies when a plan return fails to disclose transactions giving rise to excise taxes which exceed 25 percent of the excise taxes attributable to disclosed transactions. In other words, we hold that the failure to disclose a prohibited transaction is tantamount to omitting the excise taxes attributable to that transaction.

Our holding rests upon the following considerations. First, legislative history discloses that Congress contemplated that the extended assessment period could apply although a plan return does not provide for the calculation of excise tax liability and, therefore, no *amount* of excise tax is "properly includible" on the plan return. Section 6501(e)(3) was added to the Code by the Excise Tax Reduction Act of 1965, Pub. L. 89-44, sec. 810(b)(1), 79 Stat. 169.[14] The Senate Report explains section 6501(e)(3) as follows: "in the case of a return which fails to list properly reportable tax, the applicable period of limitation will be 6 years if the amount omitted exceeds 25 percent of the tax reported on the return." S. Rept. 324, 89th Cong., 1st Sess. (1965), 1965-2 C.B. 676, 718.

Section 6501(l)(1) (then (n)(1)) was added to the Code by the Tax Reform Act of 1969, Pub. L. 91-172, sec. 101(g)(1), 83 Stat. 525.[15] When it enacted that provision, Congress

---

[14]As originally enacted in 1965, sec. 6501(e)(3) did not apply to the sec. 4975 excise taxes in issue in the instant case. The Employee Retirement Income Security Act of 1974, however, amended the Code so that sec. 6501(e)(3) now applies to those taxes. Pub. L. 93-406, sec. 1016(a)(14), 88 Stat. 930.

The Excise Tax Reduction Act of 1965 also added sec. 6501(b)(4) to the Code. That provision states that the statute of limitations for the assessment of an excise tax begins to run when a return is filed containing an entry with respect to such tax. The Senate Report indicates that Congress intended to reverse judicial opinions holding that the period of limitations did not commence with respect to an excise tax until the specific transaction giving rise to such tax was reported. S. Rept. 324, 89th Cong., 1st Sess. (1965), 1965-2 C.B. 676, 718.

[15]The Black Lung Benefits Revenue Act of 1977 amended sec. 6501(l)(1) (then (n)(1)) to provide that the return of sec. 4975 excise taxes shall be the return of the relevant private foundation, plan, or trust for the year of the violation giving rise to the excise taxes. Pub. L. 95-227, sec. 4(d)(5), 92 Stat. 23.

An explanatory statement of Russell B. Long, chairman of the Senate Committee on Finance, on the compromise version of H.R. 5322 provides some guidance as to how the foregoing provision of the Black Lung Benefits Revenue Act relates to sec. 6501(e)(3). The explanation states:

recognized that some modification of exempt organization information returns would be necessary if such returns were to serve as the returns of specified excise taxes for period of limitations purposes. Congress, however, did not intend for information returns to provide for the calculation of excise taxes. The Senate Report states:

The usual statute of limitations applies—3 years unless there is a substantial omission of tax on the return filed by the foundation (6-year statute of limitations) * * *.[3]

[3] *The committee understands that the exempt organization information return will be revised to have one or more questions on it regarding the first- and second-level taxes, sufficient so it will constitute an excise tax return.* This procedure is followed because the first- and second-level taxes are excise taxes, under subtitle D, and the statute of limitations provisions regarding such taxes depend upon the filing of a return of subtitle D taxes. [S. Rept. 91-552 (1969), 1969-3 C.B. 423, 446. Emphasis supplied.]

The foregoing language indicates that the 6-year period of limitations can apply although the information return of an exempt organization includes only a single question regarding transactions giving rise to excise taxes. The only inference possible is that the *calculation* of excise taxes can be left to other returns, while exempt organization information returns need only provide for the *disclosure* of transactions giving rise to excise taxes.

The next consideration upon which we rest our holding is the policy underlying section 6501(e), of which section 6501(e)(3) is a part. The entire context of a statute must be considered to give effect to the object and policy of the whole law. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 51 (1987). In *Colony, Inc. v. Commissioner,* 357 U.S. 28, 36 (1958), the U.S. Supreme Court articulated the policy behind the predecessor to section 6501(e) as follows:

We think that in enacting section 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special

These [excise] taxes are treated like income, estate, and gift taxes * * *. The usual statute of limitations for assessment applies—3 years unless there is a substantial omission of tax on the return filed by the trust (6-year-statute of limitations) or no return has been filed (assessment at any time). * * * [123 Cong. Rec. 39,129 (1977).]

disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. * * *

See also *Quick Trust v. Commissioner,* 54 T.C. 1336, 1347 (1970), affd. 444 F.2d 90 (8th Cir. 1971). Our reading of section 6501(e)(3) is in harmony with that underlying policy. When, as in the instant case, a plan return provides no indication that a prohibited transaction has occurred, respondent has not been provided with a "clue" to a prohibited transaction, and an extended assessment period is appropriate.

We also consider the fact that our interpretation of section 6501(e)(3) renders the provision effective, while petitioners' interpretation, if adopted, would render the provision inoperative until the Commissioner modifies the Form 5500 series returns so that they provide for the calculation of section 4975 excise taxes. In *Ginsberg & Sons v. Popkin,* 285 U.S. 204, 208 (1932), the Supreme Court laid down the fundamental rule of construction that "effect shall be given to every clause and part of statutes." We are swayed by the legislative history to conclude that the revision advocated by petitioners was not contemplated by Congress when it enacted section 6501(l)(1) (then (n)(1)).

Finally, although petitioners' argument has not been addressed expressly by this Court, our interpretation of section 6501(e)(3) is consistent with our precedents. In *Rutland v. Commissioner,* 89 T.C. 1137, 1152 (1987), we held that "failure to disclose a transaction on the [plan] return results in a 100-percent omission of the tax imposed with respect to such transaction."[16] Our interpretation also is consistent with the regulation cited by respondent, section 301.6501(e)-1(c)(4), Proced. & Admin. Regs.[17]

We recognize that petitioners' argument is supported by a literal reading of section 6501(e)(3). Nevertheless, literal interpretations of statutes must be rejected if they lead to results which are absurd in light of Congressional intent.

[16]In *Cline v. Commissioner,* T.C. Memo. 1988-144, we held that the 6-year period was inapplicable to assessment of self-dealing excise tax, but only because the self-dealing transaction was disclosed on the foundation return, which claimed that the transaction was exempt.

[17]We need not address whether the 6-year period of limitations would apply when a plan return fails to disclose a transaction but the excise tax attributable to that transaction does not exceed 25 percent of the excise tax attributable to disclosed transactions.

*United States v. American Trucking Associations*, 310 U.S. 534, 544 (1940); *Estate of Sachs v Commissioner*, 88 T.C. 769, 777 (1987), affd. in part and revd. in part on another issue 856 F.2d 1158 (8th Cir. 1988). Words are "inexact tools at best" and therefore "there is wisely no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination." ' " *Harrison v. Northern Trust Co.*, 317 U.S. 476, 479 (1943) (quoting *United States v. American Trucking Associations, supra* at 544); see *J.C. Penney Co. v. Commissioner*, 37 T.C. 1013, 1017 (1962), affd. 312 F.2d 65 (2d Cir. 1962); *Carasso v. Commissioner*, 34 T.C. 1139, 1142 (1960), affd. 292 F.2d 367 (2d Cir. 1961). When, as in the instant case, there is a failure to disclose prohibited transactions despite questions on plan returns requiring such disclosure and Congressional intent indicates that the extended assessment period can apply irrespective of the lack of a place on a plan return for the computation of excise tax, we believe that an extended assessment period is appropriate and required by section 6501(e)(3).

## Excise Taxes Subject to 6-Year Limitations Period

Prior to addressing petitioners' next argument, additional explanation of the section 4975(a) excise tax is helpful.

As noted, section 4975(a) imposes an excise tax equal to 5 percent of the "amount involved" in a prohibited transaction *"for each year (or part thereof) in the taxable period."* (Emphasis supplied.) Thus, a tax is imposed not only in the year of the prohibited transaction, but also in subsequent years.

Moreover, in calculating a taxpayer's section 4975(a) excise tax liability for a given taxable year, respondent uses a method called "pyramiding," which we expressly approved in *Lambos v. Commissioner*, 88 T.C. 1440, 1451-1452 (1987). See also *Rutland v. Commissioner*, 89 T.C. at 1151. Under pyramiding, prohibited loan or lease transactions are deemed to reoccur "on the first day of each taxable year or portion of a taxable year which is within the taxable period and which begins after the taxable year in which the transaction occurs." Sec. 53.4941(e)-1(e)(1)(i), Foundation Excise Tax Regs.

The statutory rule that imposes excise tax in taxable years following that of the prohibited transaction and pyramiding both result in excise tax liability in years subsequent to that in which the prohibited transaction occurs.

Petitioners argue that the Form 5500 series returns filed by the plan for 1981 and 1982 do not inquire into prohibited transactions occurring in prior years, and that therefore there has not been a failure to disclose those earlier transactions. They argue that the 6-year period does not apply because taxes attributable to those transactions are not "properly includible" taxes which have been omitted.

Petitioners direct our attention to Form 990-PF (1990), for use by private foundations. We note that Form 990-PF (1990) contains the following questions respecting self-dealing excise tax liability:

10. * * * a. During the year did you (either directly or indirectly): * * * (1) Borrow money from, lend money to, or otherwise extend credit to (or accept it from) a disqualified person? * * *

> \* \* \* \* \* \* \*

10. * * * c. *Did you engage in a prior year in any of the acts described in 10a, other than excepted acts, that were acts of self-dealing not corrected by the first day of your tax year beginning in 1989?* [Emphasis supplied.]

Moreover, the instructions to Form 990-PF direct private foundations disclosing self-dealing transactions to complete and attach a Form 4720, which provides for the computation of excise tax, to the private foundation return.

Respondent counters by referring us to *Rutland,* where we approved pyramiding. Petitioners, however, do not challenge the validity of pyramiding as a method of calculating section 4975(a) excise tax liability. Petitioners argue, rather, that the 6-year period of limitations does not apply to excise taxes attributable to pyramiding and to the statutory rule imposing excise tax in years subsequent to that of the prohibited transaction. We do not decide the issue, however, because there remain genuine issues of material fact precluding partial summary judgment.

Under Rule 121(b), summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that a decision may be rendered as a matter of law." See *Naftel v. Commissioner,* 85 T.C. 527, 529 (1985); *Jacklin v. Commissioner,* 79 T.C. 340, 341 (1982); *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982). The moving party bears the burden of proving that there is no genuine issue of material fact and that such party should prevail on the substantive issues as a matter of law. Rule 121(b); *Naftel v. Commissioner, supra* at 529; *Espinoza v. Commissioner, supra* at 416.

Rule 121(d) provides that "an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." In deciding whether to grant summary judgment, we construe the pertinent material in a manner most favorable to the party against whom summary judgment is sought. *United States v. Diebold, Inc.,* 369 U.S. 654 (1962) (construing Federal Rules of Civil Procedure Rule 56, upon which Rule 121 is based); *Naftel v. Commissioner, supra* at 529; *Jacklin v. Commissioner, supra* at 344.

In the instant case, construing the material in a manner most favorable to respondent, we conclude that petitioners have failed to prove that there exist no genuine issues of material fact and that they are entitled to partial summary judgment as a matter of law. Petitioners argue that the questions on the Form 5500 series returns do not elicit disclosure of amounts *originally* advanced in years prior to the year for which the return is filed. Petitioners, however, have not shown what, if any, portions of the excise tax deficiencies in issue are attributable to prior year transactions. The record does not contain the terms of the plan loans, beyond providing interest rates. For example, the repayment terms of the plan loans, prior to the DOL settlement, have not been provided, although we think such terms are relevant to the issue of whether amounts originally advanced in a prior year can be considered reloaned in subsequent years.

In sum, we conclude that petitioners have failed to prove their entitlement to partial summary judgment on the

statute of limitations grounds and accordingly will deny their second motion.

To reflect the foregoing,

*An appropriate order will be entered.*

---

APPENDIX

Robert Thoburn
Docket No. 39546-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/80 | $604 | $136 | $151 |
| 12/31/81 | 1,897 | 427 | 474 |
| 12/31/82 | 3,200 | 720 | 640 |
| 12/31/83 | 4,437 | 998 | 621 |
| 12/31/84 | 5,619 | 1,264 | 450 |
| 12/31/85 | 6,856 | 1,234 | 137 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $143,200.

Richard W. Cunningham
Docket No. 39547-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/80 | $1,524 | $383 | $381 |
| 12/31/81 | 4,211 | 947 | 2,000 |
| 12/31/82 | 6,595 | 1,484 | 2,803 |
| 12/31/83 | 8,972 | 2,019 | 3,275 |
| 12/31/84 | 11,242 | 2,529 | 3,428 |
| 12/31/85 | 13,619 | 2,451 | 2,723 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $286,911.

Robert C. Slaton
Docket No. 39548-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/82 | $43 | $10 | $9 |
| 12/31/83 | 279 | 63 | 39 |
| 12/31/84 | 503 | 113 | 40 |
| 12/31/85 | 736 | 132 | 15 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $15,067.

John W. Andrews
Docket No. 39549-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/80 | $1,596 | $359 | $399 |
| 12/31/81 | 4,263 | 959 | 1,066 |
| 12/31/82 | 6,943 | 1,562 | 1,389 |
| 12/31/83 | 9,349 | 2,104 | 1,309 |
| 12/31/84 | 11,643 | 2,620 | 931 |
| 12/31/85 | 14,045 | 2,528 | 281 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $295,956.

Robert H. McCollough
Docket No. 39550-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/80 | $1,170 | $263 | $293 |
| 12/31/81 | 3,305 | 744 | 826 |
| 12/31/82 | 5,154 | 1,160 | 1,031 |
| 12/31/83 | 6,844 | 1,540 | 958 |
| 12/31/84 | 8,456 | 1,903 | 676 |
| 12/31/85 | 10,144 | 1,826 | 203 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $213,842.

Donald T. Quick
Docket No. 39551-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/80 | $733 | $165 | $183 |
| 12/31/81 | 1,732 | 390 | 433 |
| 12/31/82 | 2,708 | 609 | 542 |
| 12/31/83 | 3,599 | 810 | 504 |
| 12/31/84 | 4,449 | 1,001 | 356 |
| 12/31/85 | 5,339 | 961 | 107 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $113,417.

Homer Knizley, Jr.
Docket No. 39552-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/80 | $431 | $97 | $108 |
| 12/31/81 | 1,312 | 295 | 328 |
| 12/31/82 | 2,244 | 505 | 449 |
| 12/31/83 | 3,155 | 710 | 442 |
| 12/31/84 | 4,025 | 906 | 322 |
| 12/31/85 | 4,935 | 888 | 99 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $101,843.

Melvin C. Dace
Docket No. 39553-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/80 | $1,936 | $436 | $484 |
| 12/31/81 | 4,926 | 1,108 | 1,232 |
| 12/31/82 | 7,788 | 1,752 | 1,558 |
| 12/31/83 | 10,462 | 2,354 | 1,465 |
| 12/31/84 | 13,014 | 2,928 | 1,041 |
| 12/31/85 | 15,685 | 2,823 | 314 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $331,731.

Mark V. Barrow
Docket No. 39554-87

| TYE | Sec. 4975(a) first-tier tax deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 12/31/80 | $802 | $180 | $201 |
| 12/31/81 | 2,482 | 558 | 621 |
| 12/31/82 | 4,195 | 944 | 839 |
| 12/31/83 | 5,717 | 1,286 | 800 |
| 12/31/84 | 7,170 | 1,613 | 574 |
| 12/31/85 | 8,691 | 1,564 | 174 |

Respondent also determined a deficiency in second-tier tax under sec. 4975(b) of $181,806.