FOAM RECYCLING ASSOCIATES, SIDNEY J. FREEDMAN, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner v. COMMISIONER OF INTERNAL REVENUE, Respondent
FOAM RECYCLING ASSOC. v. COMMISIONER
Docket No. 5303-90
United States Tax Court
T.C. Memo 1992-645; 1992 Tax Ct. Memo LEXIS 676; 64 T.C.M. (CCH) 1243; November 4, 1992, Filed An order will be issued denying petitioner's motion. For Petitioner: Donald C. Lubick and Alice A. Joseffer. For Respondent: Mary P. Hamilton. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: This matter is before the Court on a motion for summary judgment filed by petitioner, a partner other than the Tax Matters Partner (TMP) in Foam Recycling Associates (Foam). Foam is a first tier partnership which is part of the Plastics Recycling Group. See Provizer v. Commissioner, T.C. Memo. 1992-177, *677 pending on appeal before the Sixth Circuit, a decision on the merits with respect to a Plastics Recycling group case for a pre-TEFRA year. The sole issue for our consideration is whether the period of limitations upon assessment applicable to a partner's distributive share of partnership items of a TEFRA partnership was validly extended by a Form 872-A that was executed by the individual partner. Petitioner contends that the Form 872-A, Special Consent to Extend the Time to Assess Tax, that he executed for the 1982 year is not effective to extend the statute of limitations for purposes of proceedings under the Tax Equity and Fiscal Responsibility Act of 1982, (TEFRA) Pub. L. 97-248, 96 Stat. 324. We hold that the Form 872-A that petitioner executed is effective to extend the statute of limitations with respect to TEFRA partnership items. FINDINGS OF FACT Foam is a limited partnership that was formed in 1982. Foam's partnership return for the 1982 year was filed on or about March 15, 1983, and lists "Recycling Equipment" as Foam's principal product or service. Petitioner Sidney J. Freedman was one of the limited partners in Foam during 1982, and owned a 4.12-percent interest *678 in the profits, losses, and capital of the partnership. Petitioner claimed his pro rata share of partnership losses and tax credits on his 1982 Federal Income Tax Return. Petitioner filed his 1982 individual income tax return on or about April 15, 1983. On the Foam Subscription Agreement, petitioner listed his employment as president, manager, and owner of Specialized Industrial Supply Inc., a wholesale precision fabrication company. He listed the frequency of his investment in "tax sheltered" partnership ventures as "often", and the frequency of his investment in real estate and marketable securities as "occasionally". He also represented that his net worth exceeded $ 500,000 and listed his assets as $ 1,000,000 and his liabilities as zero. Richard Roberts (Roberts) was general partner and TMP of Foam in 1982 and at all other times relevant hereto. On April 2, 1984, Roberts executed a Form 2848, Power of Attorney and Declaration of Representative, naming Harris W. Freedman, CPA and Shaye Jacobson, CPA (Jacobson) as attorneys-in-fact for Foam. On January 23, 1985, a Notice of Beginning of Administrative Proceedings (NBAP) was issued to the TMP and all other partners of Foam *679 for its 1982 tax year. On November 5, 1985, Jacobson executed Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, with respect to Foam's 1982 tax year. This consent extended the period of limitations to June 30, 1987. Respondent concedes that the consent executed by Jacobson expired before the Final Partnership Administrative Adjustment (FPAA) notice was issued. Petitioner received a letter from the IRS dated December 10, 1985, requesting that he extend the statute of limitations for assessment of tax with respect to the 1982 tax year. Respondent enclosed Publication 1035, Extending the Tax Assessment Period, with this letter. On December 12, 1985, petitioner executed a Form 872-A for his 1982 tax year. The Form 872-A was also signed by petitioner's accountant, Vincent Ferraro (Ferraro), on the line designated for the signature of taxpayer's representative. On its face, the Form 872-A extended the period of limitations until the 90th day after (1) the Internal Revenue Service office considering the case received a Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer; (2) the Internal *680 Revenue Service mailed a Form 872-T to the taxpayer; or (3) the Internal Revenue Service mailed a notice of deficiency to the taxpayer. The Form 872-A contained the following restrictive language: The amount of any deficiency assessment is to be limited to that resulting from any adjustments to (1) items affected by continuing tax effects caused by adjustments to any prior tax return; (2) your distributive share of any items of income, gain, loss, deduction, or credit of, or distribution from the entity(ies) known as Hyannis Recycling Associates Foam Recycling Associates (3) the tax basis of your interests in the aforementioned entity(ies); (4) the returns of the aforementioned entity(ies) which also affect your return and; (5) including any consequential changes to other items based on such adjustment; and (6) any adjustments to the following items: Dividend Income (7) including any consequential changes to other items based on these items. The use of the term "entity(ies)" is without prejudice to the right of the Commissioner to challenge whether such entity(ies) exist, or if existing, the character of such entity(ies). On November 3, 1989, petitioner executed a Form *681 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, for the purpose of terminating the Form 872-A. The 872-T was received by the IRS on November 21, 1989. An NBAP with respect to Foam's 1982 tax year, dated December 20, 1989, was issued to the TMP and also to petitioner as a notice partner of Foam. An FPAA with respect to Foam's 1982 tax year, dated December 21, 1989, was issued to the TMP and also to petitioner as a notice partner of Foam. Petitioner filed a petition with this Court on March 22, 1990, as a partner other than the TMP. The FPAA was issued after the expiration of the applicable period of limitations for assessment unless the Form 872-A executed by petitioner was effective to extend the 3-year period for assessment of taxes attributable to Foam partnership items. Petitioner argues that the consent he executed was not effective because it was not a "TEFRA consent". OPINION In general, the period for assessing any income tax attributable to partnership items (or affected items) for a partnership taxable year will not expire until the later of a date which is 3 years after the partnership files its information return for the taxable *682 year in question or the last day for filing such return for such year (without extensions). Sec. 6229(a). The rules concerning the extension of the statute of limitations for assessing any tax attributable to partnership items or affected items are set forth in section 6229(b), which provides as follows: (b) EXTENSION BY AGREEMENT. - (1) IN GENERAL. - The period described in subsection (a) (including an extension period under this subsection) may be extended - (A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and (B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement), before the expiration of such period. (2) COORDINATION WITH SECTION 6501(c)(4). -- Any agreement under section 6501(c)(4) shall apply with respect to the period described in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items. Petitioner argues that the only type of consent which is effective to extend the statute of limitations for purposes of *683 TEFRA proceedings between an individual partner and the Secretary is what petitioner labels a "TEFRA consent", by which petitioner refers to a consent meeting the requirements of section 6229(b)(1)(A). Petitioner contends that the Form 872-A that he executed was not a valid TEFRA consent because it did not conform to the form set forth in the IRS Manual and various IRS training materials and handbooks. Petitioner also argues that respondent did not intend the consent to be a TEFRA consent and that the consent lacked mutual assent. Petitioner further urges that even if the consent is effective to extend the statute of limitations as to TEFRA partnership items, respondent should be estopped from relying on the consent. We reject each of these arguments for reasons set forth below. 1. Validity of Form 872-A For Purposes of Section 6229
Section 6229(b)(2) does not require or mandate the use of a particular form or specific language to extend the statute of limitations pursuant to section 6229(b)(1)(A). Section 6229(b)(2) states that any agreement under section 6501(c)(4) shall apply with respect to the period of limitations on partnership items only if such agreement expressly *684 provides that it applies to partnership items. Petitioner and respondent agree that a Form 872-A will not be effective as to partnership items unless the form is modified as required by section 6229(b)(2). Petitioner argues that the term "partnership item" is a defined term in the TEFRA statutes, and therefore, reference to the TEFRA statutes and the specific phrase "partnership items" must be expressly stated on Form 872-A for the form to be an effective section 6229(b)(1)(A) consent. Respondent argues that the Form 872-A executed in this case contains all of the information required by section 6229(b)(1)(A) and (2) even though it does not use the specific term "partnership item". We hold that the Form 872-A executed in this case meets the express requirements of section 6229(b)(2) and is an effective consent pursuant to section 6229(b)(1)(A), to extend the statute of limitations with respect to petitioner's distributive share of Foam partnership items. The consent at issue here expressly identifies Foam as the source of the flow-through adjustments for which the parties agreed to extend the statute of limitations. The pertinent section of the consent states that the statute *685 is being extended with respect to adjustments to "the returns of the aforementioned entity(ies) which also affect your return." Foam is one of the two entities listed. The circumstance that the specific term "partnership item" is not expressly used in the consent is not a defect that renders the consent ineffective to extend the statute of limitations as to TEFRA partnership items because the consent includes a description of items which constitute partnership items. Section 6231(a)(3) states that: The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level. Pursuant to section 301.6231(a)(3)-1(a), Proced. & Admin. Regs.: the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items: *686 (1) The partnership aggregate and each partner's share of each of the following: (i) Items of income, gain, loss, deduction, or credit of the partnership; The language of section 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs., was expressly incorporated into the language added to the Form 872-A that the parties in this case executed. Petitioner argues that the consent should not be considered a valid consent as to TEFRA partnership items because the consent is not in accord with guidelines set forth for TEFRA consents in the IRS Manual, the IRS Coursebook, and the IRS Appeals handbook. However, it is well established that the IRS Manual, handbooks and training materials are not the law. Keado v. United States, 853 F.2d 1209, 1214 (5th Cir. 1988); see Thoburn v. Commissioner, 95 T.C. 132, 141-142 (1990), and cases cited therein. Furthermore, applicable provisions in these materials were issued at least 3 years after the consent in question was executed, and each source sets forth varying language. This latter circumstance indicates that the language in the IRS materials was precatory, and not mandatory. 2. *687 Mutual Assent
A consent to extend the period of limitations on assessment is not a contract, but rather a unilateral waiver of a defense by the taxpayer. Schulman v. Commissioner, 93 T.C. 623, 639 (1989). "Contract principles are significant, however, because section 6501(c)(4) requires a written agreement, and we look to the objective manifestations of mutual assent to determine the terms of such agreement." Id.
Petitioner argues that there are no manifestations of mutual assent because (1) he had no legal training, and would not have signed the consent if he had known it would be applicable to TEFRA partnership items; (2) Publication 1035, which was supplied by respondent at the time the consent was signed, was misleading because it did not refer to TEFRA cases; (3) the consent does not refer to section 6229, or TEFRA, or use the term "partnership items"; and (4) respondent did not intend the consent to be a section 6229(b)(1)(A) consent because the form did not conform to any of respondent's own guidelines. Petitioner does not persuade this Court that he was unsophisticated in business matters and was ignorant as to the meaning or scope *688 of the Form 872-A that he signed. Throughout the proceedings in this case, at the administrative stage as well as before this Court, petitioner has availed himself of sophisticated tax counsel. In addition to petitioner's signature on the consent, petitioner's accountant, Ferraro, also executed the consent on the line for "taxpayer's representative". At the time of his investment in Foam, petitioner was an experienced business executive. In the subscription agreement for his investment in Foam, he listed the frequency of his investment in "tax sheltered" partnership ventures as "often", and the frequency of his investment in real estate and marketable securities as "occasionally". Petitioner was aware or should have been aware that the consent he signed extended the statute of limitations as to Foam partnership items. Even if petitioner had not been aware that the consent he executed constituted an agreement under section 6229(b)(1)(A), he surely must have been aware that the consent related to partnership items, specifically items of Foam. Petitioner was aware that Foam was a partnership as evidenced by his attachment of several documents to his pleadings which identify Foam *689 as a partnership, including the subscription agreement, his tax return, a copy of his Schedule K-1 for Foam, and a copy of the NBAP dated January 23, 1985, issued to him regarding Foam. The NBAP put petitioner on notice that partnership proceedings had been initiated as to Foam. Petitioner himself has shown that he was well aware he was extending the statute of limitations with respect to partnership items of Foam for the 1982 tax year. The fact that respondent furnished Publication 1035 to petitioner and that the publication furnished at that time did not include TEFRA cases does not show that petitioner was misled. By its own terms, Publication 1035 is not the exclusive information available with respect to consents to extend the statute of limitations. The circumstance that the Form 872-A did not conform to IRS guidelines is not dispositive as to whether respondent intended the form to qualify as a section 6229(b)(1)(A) consent. These guidelines were issued after the consent was executed, and the language therein is precatory, and not mandatory. The restricted consent at issue in this case is complete and unambiguous on its face. It represents the explicit agreement of *690 the parties to extend the statute of limitations for partnership items of Foam. 3. Equitable Estoppel
Petitioner contends that even if the consent could be construed as a consent extending the statute of limitations for partnership items of Foam, respondent is nevertheless equitably estopped from relying upon the consent. Respondent contends that the record does not support a finding of equitable estoppel. We agree with respondent. "The doctrine of equitable estoppel is applied against the Government 'with the utmost caution and restraint.'" Kronish v. Commissioner, 90 T.C. 684, 695 (1988), citing and quoting from Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987). There are several conditions that must be satisfied before the doctrine is applied: (1) A false representation or wrongful, misleading silence by the party against whom the opposing party seeks to invoke the doctrine; (2) error in a statement of fact and not in an opinion or statement of law; (3) ignorance of the true facts; (4) reasonable reliance on the acts or statements of the one *691 against whom estoppel is claimed; and (5) adverse effects of the acts or statements of the one against whom estoppel is claimed. See Kronish v. Commissioner, supra at 695, and cases cited therein. Petitioner contends that respondent's furnishing of Publication 1035 rises to the level of a false representation or wrongful, misleading silence. Petitioner argues that the publication did not address TEFRA consents nor describe the procedural consequences of signing consents with respect to TEFRA partnership matters. We find that the furnishing of Publication 1035 does not rise to the level of a false representation or wrongful, misleading silence. Petitioner was a sophisticated taxpayer, and an admitted frequent investor in tax-sheltered partnerships. In addition, he was represented by a tax adviser at the time the consent was signed. Moreover, the publication itself expressly states that it is not the exclusive source of information regarding consents to extend the statute of limitations. Since petitioner has failed to prove that there was a false representation or misleading silence, we need not address the other requirements of equitable estoppel. *692 Respondent is not estopped from relying upon the consent form signed by petitioner. To reflect the foregoing, An order will be issued denying petitioner's motion. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩