MARTIN I. GREENE AND JUNE A. GREENE, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 25789–83.    Filed December 24, 1985.

*Leonard J. Witman*, for the petitioners.
*Robert A. Stern*, for the respondent.

KÖRNER, *Judge*: Respondent determined a deficiency in the petitioners' income tax for the calendar year 1980 in the amount of $16,007.50, together with an addition to tax under section 6653(a)[1] in the amount of $800.37. After concessions, the only issue for us to decide in this case is whether petitioner June A. Greene's surrender of an annuity contract which she had with one insurance company, and the immediate reinvestment of the proceeds thereof in a comparable annuity contract with another company, gave rise to taxable income in 1980, the year of the transaction.

The facts herein were largely stipulated, and such stipulation of facts, together with joint exhibits, are incorporated herein by this reference.

FINDINGS OF FACT

Petitioners, husband and wife, were residents of Livingston, New Jersey, at the time their petition herein was filed. They timely filed a joint Federal income tax return for the year 1980 with respondent's service center at Holtsville, New York.

During the period September 1966 through March 1985, petitioner June Greene (hereinafter petitioner)[2] was a schoolteacher employed by the Livingston, N.J., Board of Education,

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

[2]Petitioner Martin I. Greene is involved herein only by having filed a joint return with petitioner June A. Greene, and will not be referred to hereinafter.

and was so employed at the time of trial herein. In the period September 1975 through October of 1980, the Livingston Board of Education made payments, pursuant to a salary reduction agreement, to an annuity plan qualifying under section 403(b), for petitioner's benefit. The annuity contract was issued by the Variable Annuity Life Insurance Co. (VALIC). Petitioner's policy with VALIC was a fixed interest annuity account. Pursuant to the salary reduction agreement between petitioner and the Board of Education, as amended from time to time, the Board of Education paid designated amounts to VALIC in certain of petitioner's pay periods for the purpose of funding petitioner's annuity contract.

On October 24, 1980, petitioner signed a form with VALIC, under which she surrendered her annuity contract with that company and demanded the payment of the proceeds of the account to her. It was her intention to take these proceeds and use them to fund a new annuity account, qualifying under section 403(b), which she would purchase from the Charter Security Life Insurance Co. (Charter).

VALIC would not surrender the funds in petitioner's annuity account with it directly to Charter, but would surrender the funds directly to petitioner. On October 28, 1980, VALIC issued its check in the amount of $35,337.14 to petitioner, representing the credit balance in petitioner's VALIC annuity contract. Petitioner received this check shortly thereafter, and, on November 5, 1980, she filled out an appropriate application form from Charter for the purpose of opening a section 403(b) annuity account with Charter. To this application she attached the check which she had received from VALIC, which she had endorsed in favor of Charter.

Petitioner's application to Charter, together with her endorsed check from VALIC, was received by Charter on November 10, 1980, and Charter issued its new policy in her favor on the following day. Said policy, with a later minor modification with respect to the effective interest rate, was then continued in effect thereafter.

No binding agreement or any other contracts were signed between petitioner and Charter which would have required her to endorse or pay over the VALIC check to Charter, once received by her. Petitioner was free to use the check from VALIC in any way she wished and was in no way obligated to

use such funds to purchase the new annuity contract with Charter.

### OPINION

On the basis of the above set of simple and uncontradicted facts, petitioner contends that her surrender of her VALIC annuity, and the prompt use of the proceeds thereof to purchase a new and comparable annuity from Charter, constituted a nontaxable exchange within the meaning of section 1035. Respondent, on the other hand, contends that there was no exchange within the meaning of that Code section, but rather a surrender of the VALIC policy, with the proceeds thereof being paid to petitioner, who thereafter reinvested such proceeds in a new annuity contract with Charter. Since petitioner was under no binding obligation to use the proceeds of the VALIC policy in this fashion, respondent argues, the transaction did not fall within the ambit of section 1035, and was therefore taxable.[3]

Section 72(e) provides, in general, that (a) if an amount is received under an annuity contract, but (b) is not received as an annuity, and (c) if no other provision of the income tax laws applies, then such amount shall be taxable to the recipient, as therein provided.[4]

---

[3]The parties are in agreement that the provisions of sec. 403(b)(8) (concerning "rollover amounts") do not apply in the instant case. Although the Court is not bound by the stipulation of the parties as to matters of law, see *King v. United States*, 641 F.2d 253 (5th Cir. 1981), we have examined independently the provisions of sec. 403(b)(8), and we conclude that such section does not apply herein, since the distribution of the balance of the VALIC account to petitioner did not constitute a "qualifying distribution" within the meaning of sec. 403(b)(8) and sec. 402(e)(4)(A), as in effect in 1980.

[4]Sec. 72(e) provided as follows:

SEC. 72(e). AMOUNTS NOT RECEIVED AS ANNUITIES.—

(1) GENERAL RULE.—If any amount is received under an annuity, endowment, or life insurance contract, if such amount is not received as an annuity, and if no other provision of this subtitle applies, then such amount—

(A) if received on or after the annuity starting date, shall be included in gross income; or

(B) if subparagraph (A) does not apply, shall be included in gross income, but only to the extent that it (when added to amounts previously received under the contract which were excludable from gross income under this subtitle or prior income tax laws) exceeds the aggregate premiums or other consideration paid.

For purposes of this section, any amount received which is in the nature of a dividend or similar distribution shall be treated as an amount not received as an annuity.

(2) SPECIAL RULES FOR APPLICATION OF PARAGRAPH (1).—For purposes of paragraph (1), the following shall be treated as amounts not received as an annuity:

(A) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the

It is clear from the facts in this case, and the parties do not dispute, that the proceeds received by petitioner from VALIC were "received under an annuity contract" within the meaning of section 72(e), and were likewise not "received as an annuity," within the meaning of such section. There is likewise no disagreement between the parties that both the VALIC contract which petitioner surrendered, as well as the Charter contract which petitioner purchased, were annuity contracts within the meaning of section 403(b). Unless some other Code provision applies, therefore, the VALIC proceeds would appear to be taxable to petitioner. Section 1035, however, as pertinent herein, provides as follows:

SEC. 1035. CERTAIN EXCHANGES OF INSURANCE POLICIES.
  (a) GENERAL RULES.—No gain or loss shall be recognized on the exchange of—

\* \* \* \* \* \* \*

  (3) an annuity contract for an annuity contract.
  (b) DEFINITIONS.—For the purpose of this section—

\* \* \* \* \* \* \*

  (2) ANNUITY CONTRACT.—An annuity contract is a contract to which paragraph (1) applies but which may be payable during the life of the annuitant only in installments.

Respondent's regulations, in turn, provide in pertinent part:

Sec. 1.1035–1. Certain exchanges of insurance policies.
  Under the provisions of section 1035 no gain or loss is recognized on the exchange of—

\* \* \* \* \* \* \*

  (c) An annuity contract for another annuity contract (section 1035(a)(3)), but section 1035 does not apply to such exchanges if the policies exchanged do not relate to the same insured. The exchange, without recognition of gain or loss, of an annuity contract for another annuity contract under section 1035(a)(3) is limited to cases where the same person or persons are the obligee or obligees under the contract received in exchange as under the original contract. \* \* \*
  [Sec. 1.1035–1, Income Tax Regs.]

---

consideration paid for the contract; and
  (B) any amount received under a contract on its surrender, redemption, or maturity.
In the case of any amount to which the preceding sentence applies, the rule of paragraph (1)(B) shall apply (and the rule of paragraph (1)(A) shall not apply).

Assuming, then, that what took place here was an "exchange" within the meaning of section 1035, it would appear that petitioner fits cleanly within the provisions of that section, and should be entitled to the nonrecognition treatment there afforded.

It must be admitted that in the conventional and ordinarily accepted meaning of the word, what took place here did not strictly constitute an exchange. In normal parlance, "exchange" would connote the transfer of property by A to B, in return for which B would transfer property to A.[5] We are satisfied, however, that Congress intended the use of the word in the broader sense, as where the taxpayer gives up an insurance contract with one company, in order to procure the same or a comparable contract from another company. Viewed from the standpoint of the insured taxpayer, he has simply "exchanged" one policy for another just like it, albeit with two different companies. Our interpretation is fortified by the applicable regulation interpreting section 1035, which requires only that the insurance contracts be of the same type, e.g., an annuity for an annuity, and that the obligee under the two contracts be the same person, viz, the taxpayer. See sec. 1.1035–1, Income Tax Regs.

Respondent has previously recognized the validity of the above propositions. In a fact situation not materially different from that presented in the instant case, respondent, in Rev. Rul. 73–124, 1973–1 C.B. 200, ruled:

In a single integrated transaction, the employee then surrendered his entire interest in the first contract to the insurer in exchange for a check which he immediately endorsed and paid over to the employer for use in providing benefits under the second contract.

      \*      \*      \*      \*      \*      \*      \*

In this case, the same employee is the obligee under the contract received as under the contract surrendered. The fact that the employee must first surrender the original annuity contract to an insurer because of the restrictions required by section 401(g) of the Code does not prevent the total transaction from being an exchange within the meaning of section 1035 of the Code provided the proceeds received upon surrender are applied

---

[5] "Exchange of goods is a commutation, transmutation, or transfer of goods for other goods, as distinguished from *sale*, which is a transfer of goods for money." Black's Law Dictionary (3d ed. 1933), defining "exchange" in the law of personal property.

immediately to the purchase of a second annuity contract for the same employee.

In this case, however, respondent seeks to impose an additional requirement upon petitioner, in order to block the application of section 1035. Respondent urges that, prior to the receipt of the funds from VALIC, petitioner was required to have entered into a "binding obligation" with Charter to turn the VALIC proceeds over to Charter for the issuance of a new annuity contract. Absent such a "binding obligation," respondent urges, petitioner was free to do what she wished with the VALIC proceeds, and thus no exchange within the meaning of section 1035 took place, even though petitioner in fact did turn over the VALIC proceeds to Charter immediately, by endorsing over the VALIC check to Charter and sending it in with her Charter application. Thus, as respondent states on brief:

It is respondent's position that employer intervention is not essential to achieving nonrecognition of gain under the provisions of the statute. Therefore the fact that VALIC would pay the surrender proceeds only to the petitioner did not preclude the petitioner from invoking the provisions of IRC §1035(a)(3). However, once the petitioner received physical possession of the surrendered proceeds without a binding obligation to turn over the funds to Charter Life, petitioner was precluded from executing a valid IRC §1035(a)(3) annuity exchange. This is the salient factor for purposes of compliance with the Revenue Ruling.

We seek in vain to find any authority to support respondent's position here. Neither the statute nor the regulations contain any such requirement, either expressly or by any necessary implication. The parties have not cited to us, and our research has not uncovered any case dealing with the question. The case thus appears to be one of first impression.

Nor do we find respondent's position supported by logic. What kind of "binding obligation" would respondent require petitioner to enter into with Charter in a situation such as this?[6] Charter would clearly not issue a new annuity policy to petitioner unless it was paid, and petitioner clearly could not demand the issuance of a new policy until she paid for it. Any "agreement" entered into between petitioner and Charter

---

[6]Note that respondent is not arguing that petitioner had to enter into any form of "binding obligation" with VALIC, the first company in which she had her annuity, and the company which paid her the money.

thus would clearly be executory on both sides, with performance by one side contingent upon performance by the other side. If petitioner failed to use the proceeds of her VALIC policy, or equivalent funds, to pay for the issuance of a new annuity policy by Charter, then Charter would clearly not issue it. In the circumstances of this case, we fail to see how any meaningful "binding obligation" could have been entered into between petitioner and Charter which would have any controlling effect in the premises.

So far as respondent's reliance on Rev. Rul. 73–124 is concerned, we note that revenue rulings do not have the force of law and are merely statements of the Commissioner's litigating and administrative positions. *Dixon v. United States*, 381 U.S. 68, 73 (1965); *Stubbs, Overbeck & Associates v. United States*, 445 F.2d 1142, 1146–1147 (5th Cir. 1971). Even if we were to give precedential weight to respondent's revenue ruling here, we do not think it stands for the proposition cited. The ruling merely stands for the proposition that under the facts there given, not distinguishable from the facts in the instant case, a valid exchange of insurance policies within the meaning of section 1035 took place, without reference to any alleged "binding agreement."

Finding no warrant for respondent's position herein, and finding that petitioner acted within the clear terms of section 1035 and the applicable regulation, we hold that her exchange of her VALIC annuity policy for a new Charter annuity policy was within the terms of section 1035, and that no gain or loss should be recognized to petitioner by reason of the exchange.

*Decision will be entered under Rule 155.*