111 T.C. No. 20


UNITED STATES TAX COURT


DONA ELIZABETH CONWAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22257-96.                    Filed December 30, 1998.


        <u>Held</u>:  Under the facts of this case, direct
transfer of a portion of funds invested in an annuity
contract into another annuity contract qualifies as a
nontaxable exchange under sec. 1035, I.R.C.  Other
issues also decided.


Dona Elizabeth Conway, pro se.

<u>Blaine C. Holiday</u>, for respondent.


SWIFT, <u>Judge</u>:  Respondent determined a deficiency of
$123,855 and an addition to tax and a penalty with respect to
petitioner's Federal income tax for 1994.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the primary issue for decision is whether direct transfer of a portion of funds invested in an annuity contract into another annuity contract qualifies as a nontaxable exchange under section 1035.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

When the petition was filed, petitioner resided in Minneapolis, Minnesota.

Exchange of Portion of Annuity Contract

In 1992, petitioner purchased from Fortis Benefits Insurance Co. (Fortis) an annuity contract for a total purchase price of $195,643 (Fortis annuity contract). Payments under the Fortis annuity contract would not begin until February 4, 2029.

In 1994, petitioner requested Fortis to withdraw $119,000 from the Fortis annuity contract and to issue a check in favor of, and to transfer the funds directly to, Equitable Life Insurance Co. of Iowa (Equitable) for purchase of a new annuity contract from Equitable (Equitable annuity contract). Pursuant to petitioner's request, Fortis debited petitioner's annuity

contract with $119,000, retained $10,000 from the $119,000 as a "surrender charge", issued a check in the amount of $109,000 in favor of Equitable, and mailed the check directly to Equitable.

Upon receipt of the $109,000 check from Fortis and upon simultaneous receipt of petitioner's application to purchase the Equitable annuity contract, Equitable opened an annuity contract in favor of petitioner with a principal amount invested of $109,000. The record does not indicate when payments under the Equitable annuity contract were to begin, but the terms and provisions of the annuity contracts are treated by the parties as substantially equivalent.

On the application form for purchase of the Equitable annuity contract that petitioner filled out and submitted to representatives of Equitable, petitioner expressly indicated that withdrawal of the funds from the Fortis annuity contract and transfer of the funds to Equitable for purchase of another annuity contract were to be treated as a section 1035 nontaxable exchange.

In 1994, Fortis mailed to petitioner and to respondent a Form 1099-R (Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRA's, Insurance Contracts, etc.) indicating that the above transaction was taxable and that $30,535 of the $119,000 withdrawn from petitioner's Fortis annuity contract represented taxable income to petitioner.

Later, on July 30, 1997, Fortis mailed to petitioner a letter explaining that an incorrect Form 1099-R had been mailed to petitioner and that petitioner's exchange of a portion of the Fortis annuity contract for the Equitable annuity contract was intended to qualify and should have been processed by Fortis as a nontaxable exchange under section 1035.

Tax Basis in Home, Consulting Fee, and IRA Distribution

In 1971, petitioner and her husband purchased a home in Wayzata, Minnesota, for $53,500. The home was located on Lake Minnetonka in an exclusive suburb of Minneapolis.

From 1971 until 1986, petitioner, her husband and children resided in the home. In 1986, petitioner and her husband separated and were divorced. From 1986 until 1994, petitioner and her children continued to reside in the home.

Over the course of the 23 years during which petitioner resided in the home, numerous capital improvements were made to the home. With regard to improvements made to the home during 1971 to 1986, petitioner and her former husband testified at trial and generally described the improvements to the home. However, billing and payment records relating to improvements made to the home during 1971 to 1986 are no longer available. Those records were maintained by petitioner's former husband, and he has apparently lost the records. Some of those improvements are corroborated by copies of building permits.

From the time petitioner and her husband divorced in 1986 until petitioner sold the home in 1994 for $375,000, petitioner maintained records that establish the nature and cost of capital improvements made to the home.

In 1994, petitioner paid a $10,000 consulting fee relating to a family business plan and to the acquisition and the sale of personal property.

In 1994, petitioner received $5,149 as a distribution from an individual retirement account (IRA) that petitioner maintained at Great-West Life & Annuity Insurance Co. (Great-West). Great-West mailed to petitioner and to respondent a Form 1099-R indicating that $895 of the $5,149 distribution represented taxable income to petitioner.

## 1994 Tax Return and Respondent's Audit

On her 1994 Federal income tax return, petitioner did not report any taxable income relating to the transfer of a portion of the funds invested in the Fortis annuity contract into the Equitable annuity contract.

Also on her 1994 Federal income tax return, with regard to sale of her home petitioner reported a $375,000 selling price, a tax basis in the home of $335,492, and a taxable gain of $2,578. Petitioner claimed as miscellaneous itemized deductions $13,250, consisting of $10,000 for a consulting fee, $2,500 for investment loss, and $750 for legal fees, and petitioner reported as taxable

income the $895 taxable portion of the $5,149 Great-West distribution.  Petitioner, however, reported no additional tax under section 72(t) with respect to the $895 taxable portion of the Great-West distribution.

On audit, respondent determined that petitioner's transfer of a portion of the funds invested in the Fortis annuity contract into the Equitable annuity contract did not qualify as a nontaxable exchange under section 1035 and that petitioner received $30,535 of unreported taxable income relating thereto. Respondent also determined that petitioner is liable under section 72(q) for a 10-percent penalty of $3,054 on the $30,535 portion of the withdrawal from the Fortis annuity contract that respondent treated as taxable.

Further, in calculating petitioner's taxable gain on the sale of her home, respondent disallowed entirely petitioner's claimed tax basis of $335,492.  Respondent disallowed petitioner's claimed miscellaneous itemized deductions of $13,250, and respondent determined that petitioner is liable for a 10-percent additional tax of $90 under section 72(t) on the $895 taxable portion of petitioner's $5,149 Great-West distribution.

Before trial, respondent allowed petitioner a tax basis in her home of $221,633, consisting of the purchase price of $53,500 and all of the claimed $168,133 in improvements that were made to

the home after 1986 for which petitioner produced what respondent regarded as adequate documentation.[1]

On brief, respondent conceded that $9,000 of the $10,000 petitioner paid as a consulting fee is deductible as a miscellaneous itemized deduction.

OPINION

Exchange of Portion of Annuity Contract

Under section 72(e)(2)(B)(i), amounts received under an annuity contract prior to the date on which annuity payments are to begin are to be included in gross income to the extent allocable to income earned on the annuity contract.

Under section 1035(a)(3), however, gains or losses are not to be recognized where an annuity contract is exchanged for another annuity contract. Section 1035(a)(3) provides as follows:

> SEC. 1035. CERTAIN EXCHANGES OF INSURANCE POLICIES.
>
>     (a) General Rules.--No gain or loss shall be recognized on the exchange of--
>
>    *       *       *       *       *       *       *
>
>         (3) an annuity contract for an annuity contract.

---

[1]     Respondent also allowed a $36,930 adjustment to the selling price of the home to reflect a real estate sales commission that petitioner paid.

Under regulations promulgated under section 1035, in order for an exchange to qualify for nonrecognition treatment, it is required only that the contracts be of the same type, e.g., an annuity for an annuity and that the obligee under the two contracts be the same person.  No other requirements are set forth in the applicable regulations.  Section 1.1035-1(c), Income Tax Regs., provides, in part, as follows:

> Sec. 1.1035-1.  Certain exchanges of insurance policies.--Under the provisions of section 1035 no gain or loss is recognized on the exchange of:
>
> *       *       *       *       *       *       *
>
> (c) An annuity contract for another annuity contract (section 1035(a)(3)),
>
> but section 1035 does not apply to such exchanges if the policies exchanged do not relate to the same insured.  The exchange, without recognition of gain or loss, of an annuity contract for another annuity contract under section 1035(a)(3) is limited to cases where the same person or persons are the obligee or obligees under the contract received in exchange as under the original contract. * * *

Respondent argues that because the entire Fortis annuity contract was not replaced by the Equitable annuity contract, petitioner's withdrawal of $119,000 from the Fortis annuity contract does not qualify as a nontaxable exchange under section 1035 and is taxable to the extent of $30,535, the portion of the withdrawal allocable to income.

Petitioner argues that because Fortis did not distribute any funds to her personally but rather transferred the funds directly

to Equitable and because she gave up a portion of her Fortis annuity contract solely in exchange for the new Equitable annuity contract, the transaction should qualify as a nontaxable exchange of annuity contracts under section 1035.

We agree with petitioner.

Neither section 1035 nor the regulations condition nonrecognition treatment upon the exchange of an entire annuity contract. Respondent cites no authority to support respondent's position that nonrecognition treatment under section 1035 is limited to exchanges involving replacement of entire annuity contracts. Neither the statute nor the regulations contain any such requirement, either expressly or by any necessary implication.

Petitioner expressly indicated on her application with Equitable that the Equitable annuity contract was being acquired as part of a section 1035 exchange, and Fortis transferred the $109,000 directly to Equitable. No funds were distributed to petitioner.

The legislative history under section 1035 states that section 1035 was enacted to provide nonrecognition treatment for taxpayers "who have merely exchanged one * * * [annuity contract] for another better suited to their needs and who have not actually realized gain." H. Rept. 1337, 83d Cong., 2d Sess. 81 (1954). The funds withdrawn from the Fortis annuity contract

(net of the $10,000 surrender fee) were transferred directly into another annuity contract without petitioner having any personal use thereof.

In Greene v. Commissioner, 85 T.C. 1024 (1985), an insurance company distributed to the taxpayer all funds invested in an annuity contract qualified under section 403(b).[2] Upon receipt, the taxpayer endorsed the check over to another insurance company to purchase another annuity contract qualifying under section 403(b). In Greene, 85 T.C. at 1028, we concluded that the exchange was nontaxable, and we set forth a broad definition of "exchange" within the meaning of section 1035, as follows:

> We are satisfied, however, that Congress intended the use of the word [exchange] in the broader sense, as where the taxpayer gives up an insurance contract with one company, in order to procure the same or a comparable contract from another company. Viewed from the standpoint of the insured taxpayer, he has simply "exchanged" one policy for another just like it, albeit with two different companies. * * *

Petitioner herein exchanged a portion of her annuity contract with Fortis to acquire another annuity contract with Equitable. Petitioner is in essentially the same position after the exchange as she was in before the exchange, and the same

---

[2]     Annuity contracts qualifying under sec. 403(b) constitute a form of tax-deferred annuity contracts available to employees of certain tax-exempt organizations.

funds are still invested in annuity contracts (less the surrender fee), except that now petitioner owns two annuity contracts.

Petitioner's funds (less the $10,000 surrender charge) remain invested in a similar annuity contract, and petitioner has not personally received use or benefit of these funds since they were originally invested in the Fortis annuity contract in 1992.

We conclude that petitioner's direct exchange of a portion of her Fortis annuity contract for a new Equitable annuity contract qualifies under section 1035 and that no gain to petitioner is to be recognized by reason of the exchange.[3]

Because the transaction qualifies as a nontaxable exchange, petitioner is not liable for the 10-percent penalty under section 72(q) on any portion of the $119,000 withdrawal.

Tax Basis in Petitioner's Home

In determining gain or loss on the sale of property, the cost basis of the property is adjusted by capital improvements made to such property. Secs. 1001, 1012, 1016.

Generally, taxpayers bear the burden of proving entitlement to costs and deductions claimed. Bennett Paper Corp. &

---

[3] In Rev. Rul. 90-24, 1990-1 C.B. 97, involving annuity contracts issued under sec. 403(b), a portion of funds invested in one annuity contract is transferred directly to another similar annuity contract, and the transfer is treated as nontaxable. In Rev. Proc. 92-44, 1992-1 C.B. 875, under certain specified situations, partial cash distributions to taxpayers from annuity contracts are treated as nontaxable to the extent reinvested in similar annuity contracts.

Subsidiaries v. Commissioner, 699 F.2d 450, 453 (8th Cir. 1983), affg. 78 T.C. 458 (1982). Under certain circumstances, we may estimate costs and allowable deductions. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The estimates, however, must have a reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Respondent argues that petitioner has not adequately substantiated any costs and capital improvements to her home in excess of the $221,633 that respondent has agreed to. The claimed costs and improvements still in dispute relate to the years 1971 through 1986, for which petitioner has minimal or no documentation. Respondent argues that petitioner's testimony as to the costs of the claimed improvements is self-serving and uncorroborated.

Petitioner claims that the evidence relating to the improvements allegedly made during 1971 through 1986 is adequate for the Court to estimate the costs thereof and that she should be entitled to increase the tax basis in her home by an additional $156,050 beyond those items allowed by respondent, for a total tax basis in the home of $377,683.

Credible evidence adequately establishes that, during the years 1971 through 1986, petitioner and her husband made extensive capital improvements to the home. In addition to the

testimony, several of the improvements are supported by building permits in evidence.

We accept petitioner's and her former husband's testimony with regard to a number of the home improvements that are claimed to have been made during the years 1971 through 1986. Set forth in the schedule below, we summarize the various improvements that petitioner claims were made to the home during 1971 through 1986 and the estimated costs that petitioner claims were incurred for each improvement. Also set forth below with regard to the improvements are the costs, if any, that we believe can be reasonably estimated and that we allow with regard to each improvement.

| Claimed Home Improvements 1971-1986 | Petitioner's Claimed Costs | Costs Allowed |
|---|---|---|
| New electrical wiring | $ 11,000 | $ 5,000 |
| New furnace and hot water heater | 9,300 | 5,000 |
| New insulation | 8,800 | -0- |
| Reconstruction of gazebo and bridge to gazebo | 8,000 | 2,000 |
| Stone steps leading to the lake | 1,500 | -0- |
| Pool improvements and new wrought-iron fence | 8,500 | 5,000 |
| New two-car garage and removal of old garage | 46,800 | 20,000 |
| New concrete driveway | 6,500 | 4,000 |
| Reconstruction of second floor including a new wall | 12,600 | 10,000 |
| Septic tank removal and city water/sewer hookup | 11,150 | 5,000 |
| Structural improvements to doors and roof supports | 8,100 | -0- |
| New roof | 10,300 | -0- |
| Interior remodeling | 4,500 | -0- |
| Dock improvements | 1,500 | -0- |
| Kitchen improvements | 7,500 | -0- |
| Total | $156,050 | $56,000 |

Based on the evidence before us, we conclude that petitioner's tax basis in her home is $277,633, or $56,000 over the $221,633 allowed by respondent.

Miscellaneous Itemized Deductions

With respect to the claimed $1,000 consulting fee in excess of the $9,000 allowed by respondent, petitioner has failed to demonstrate that the $1,000 was paid for management, conservation, or production of income or income-producing property, and we sustain respondent's disallowance thereof.

With respect to the claimed $2,500 investment loss and the claimed $750 legal fees, the evidence provides no basis to support these claimed deductions, and we sustain respondent's disallowance thereof.

IRA Distribution

With regard to the $5,149 IRA distribution that petitioner received from Great-West, petitioner has not established that the 10-percent additional tax on the $895 taxable portion of the $5,149 distribution does not apply, and we sustain this additional tax.

To reflect the foregoing,

Decision will be entered

under Rule 155.