T.C. Memo. 2011-283

UNITED STATES TAX COURT

OMAR J. NASIR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16721-08L.                    Filed December 5, 2011.

P filed a petition for review of a lien filing
pursuant to sec. 6320, I.R.C., in response to R's
determination that the collection action was
appropriate.

<u>Held</u>:  R's determination is sustained.

Omar J. Nasir, pro se.

<u>Najah J. Shariff</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  This case is before the Court on a petition
for review of a notice of determination concerning collection

action(s) under section 6320 and/or 6330 (notice of determination).[1] Petitioner seeks review of respondent's determination sustaining a tax lien filing.

The collection action stems from late returns petitioner filed for the 2000 and 2002 tax years. The issue for decision is whether petitioner had reasonable cause for his failure to comply with sections 6651(a)(1) and (2) and 6654(a).

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulations, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioner resided in California.

Petitioner worked as an engineer in 2000 and 2002, reporting adjusted gross income of $120,992 and $83,069, respectively. Petitioner failed to timely file his Federal income tax returns for tax years 2000 and 2002 and failed to timely pay his tax liabilities for those years.

For 2000 respondent initially assessed an income tax deficiency of $29,436 on April 10, 2006, on the basis of a substitute for return he prepared pursuant to section 6020(b). The substitute for return also showed, and petitioner was assessed, a section 6651(a)(1) failure to timely file addition to

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and applicable to the periods at issue.

tax of $1,265.40, a section 6651(a)(2) failure to timely pay addition to tax of $3,301.50, and a section 6654 failure to pay estimated income tax addition to tax of $609.06. Petitioner subsequently, on or about April 23, 2006, filed a Form 1040A, U.S. Individual Income Tax Return, for his 2000 tax year, showing a tax liability of $21,958. Thereafter, respondent abated $7,478 of his assessment and reduced the tax deficiency to $21,958. Respondent also abated $1,895.50 of the late payment addition to tax, reducing the late payment addition to tax amount to $1,406, and removed the section 6654 addition to tax for failure to pay estimated income tax.

For 2002 respondent initially assessed an income tax deficiency of $37,734 on the basis of a substitute for return he prepared pursuant to section 6020(b). The substitute for return also showed, and petitioner was assessed, a section 6651(a)(1) failure to timely file addition to tax of $4,261.50, a section 6651(a)(2) failure to timely pay addition to tax of $6,980.79, and a section 6654 addition to tax for failure to pay estimated income tax of $628. Petitioner subsequently, on or about October 14, 2007, filed a Form 1040A for his 2002 tax year, showing a tax liability of $20,205. Thereafter, respondent abated $17,529 of his assessment and reduced the tax deficiency amount to $20,205. Respondent also abated $4,382.25 of the addition to tax for late payment, reducing the amount to $2,598.54.

On September 4, 2007, respondent mailed petitioner a Letter 3172, Notice of Federal Tax Lien (NFTL) Filing and Your Right to A Hearing under IRC 6320, advising petitioner that respondent would on the next day file an NFTL for 2000 and 2002. On September 5, 2007, respondent filed an NFTL to collect the unpaid tax liabilities. In response, respondent timely received petitioner's Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated October 2, 2007. Petitioner checked the boxes on the Form 12153 for withdrawal and discharge of the tax lien. Petitioner also checked boxes for the collection alternatives of an installment agreement and an offer-in-compromise.

From February to June of 2008, respondent processed petitioner's request, and on May 21, 2008, respondent ultimately conducted a collection due process hearing by phone with petitioner, although petitioner had requested a face-to-face conference. Petitioner requested penalty relief as it relates to the additions to tax for failure to timely file and the failure to timely pay on the grounds that he suffered undue financial hardship. Petitioner also requested collection alternatives, including an offer-in-compromise, but failed to provide the requested documentation.[2] Respondent sent a notice of

---

[2]The required documentation included a completed Form 433-A, Collection Information Statement for Individuals, proof of
(continued...)

determination to petitioner on June 2, 2008, informing him of the decision to deny penalty relief and sustain the lien filing.

Petitioner filed a petition on July 7, 2008, and an amended petition on July 31, 2008. This case was set for trial on June 22, 2009, but was continued on the joint motion of the parties. However, because the requested face-to-face conference had not been afforded to petitioner, respondent's San Francisco Appeals Office agreed to reconsider the case. In a letter dated May 7, 2009, in response to petitioner's new request for an offer-in-compromise, respondent again requested that petitioner provide a variety of items for consideration to the settlement officer in San Francisco before the face-to-face conference.[3] Among the items requested if petitioner still wished to pursue collection alternatives was a Form 433-A, Collection Information Statement for Individuals, and a Form 656, Offer in Compromise, both of

---

[2](...continued)
estimated tax payments for 2008, and delinquent tax returns for 2006 and 2007. Consequently, without these items, petitioner was not eligible for any collection alternatives.

[3]Respondent requested nine documents, plus the completed Form 656, Offer in Compromise, and Form 433-A. The other documents were: (1) Bank statements from January 2008 to date; (2) paycheck stubs for the previous 6 months; (3) payoff letters from mortgage lenders; (4) a copy of petitioner's current lease agreement; (5) copies of previous 6 months of rent payments; (6) copies of previous 6 months of mortgage payments; (7) 2008 Federal tax return; (8) an amended 2002 Federal tax return; and (9) documentation to substantiate any medical expenses incurred during the tax years 2000 and 2002 for treatment of petitioner's former wife's breast cancer.

which were sent to petitioner with detailed instructions. As a followup to the May 7 letter, Settlement Officer Deborah Conley (Officer Conley) sent a letter to petitioner on May 19, 2009, scheduling a face-to-face conference for June 16, 2009. This letter once again requested that petitioner file delinquent tax returns and provide respondent with a Form 433-A and other documents pertaining to his finances and expenses.

Over the next 3 months petitioner provided the necessary documents to discuss the offer-in-compromise. During this period respondent granted additional time and rescheduled the face-to-face conference with petitioner twice, in order that petitioner could gather and provide all of the necessary documents.[4] A face-to-face conference between Officer Conley and petitioner finally occurred on August 20, 2009.

At the conference petitioner submitted a completed Form 656. Under the terms of the offer-in-compromise petitioner offered $6,544 as a short-term periodic payment offer, which required him to pay 24 monthly installments of $272.66.[5]

---

[4]A face-to-face conference was originally scheduled for June 16, 2009. On June 4, 2009, petitioner requested that the conference be rescheduled to a later date. Respondent granted the request and rescheduled the face-to-face conference for Aug. 5, 2009. On July 27, petitioner once again requested that the conference be rescheduled to a later date. Respondent granted the request and rescheduled the face-to-face conference for Aug. 20, 2009.

[5]Petitioner originally wrote $10,000 as his offer-in-
(continued...)

A condition of the offer, stated on the Form 656 that petitioner completed and signed, explained that he had to continue to make the installment payments while the offer was being investigated.  Officer Conley further explained to petitioner that a failure to make the payments would result in the offer's being deemed withdrawn.  Petitioner paid the application fee and made the first installment payment at the face-to-face conference.

On August 20, 2009, after concluding the face-to-face conference with petitioner, Officer Conley assembled the offer-in-compromise package and sent it to the offer-in-compromise unit in Memphis, Tennessee (Memphis Unit).  Petitioner received a letter dated September 17, 2009, from the Memphis Unit informing him that his offer-in-compromise had been received and was being investigated.

The Memphis Unit reached a preliminary decision to reject the offer, conveying this to petitioner in a letter dated January

---

[5](...continued)
compromise but did so under the erroneous belief that refunds, such as his stimulus refund, which the IRS had already taken, would be considered as part of his offer.  Petitioner modified the Form 656 to change the offer-in-compromise amount to reflect these amounts.

15, 2010.[6]  The case was subsequently sent back to respondent's San Francisco office for a final determination.

Petitioner made timely payments under the terms of the installment plan for the months of September, October, November, and December of 2009.  However, beginning in January 2010, petitioner began to fall behind.  In a letter dated March 4, 2010, Officer Conley sent petitioner a notice that payments for January and February had not been received and that he owed $545.32.  The letter informed petitioner:  "If I do not receive the payment or proof that you made the payments, per IRC 7122(c)(1)(B)(ii) your offer will be considered withdrawn."  Officer Conley requested that the payment be submitted by March 19, 2010.  The letter also stated that if petitioner wished to propose other alternatives he should also submit them to Officer Conley by March 19.  In response, petitioner submitted two payments of $272.66 by the March 19, 2010, deadline.

Petitioner failed to timely submit his March, April, and May installment payments under the terms of the offer-in-compromise. In a letter dated June 15, 2010, Officer Conley informed petitioner that she had not received his payments for March,

---

[6]In the Memphis Unit's preliminary decision to reject petitioner's offer-in-compromise, a clerical mistake was made as to the amount petitioner offered.  The introduction of the letter stated that the offer was "in the amount of $1,200."  However, a further reading of the letter reveals that the decision was based on an offer of the correct amount of $6,544.

April, and May and that he had to submit a payment of $817.98 by June 29, 2010, or the offer-in-compromise would be withdrawn. In correspondence dated June 25, 2010, petitioner submitted a single payment of $272.66 and indicated that the April and May payments would be made by September 2010.

In a letter dated July 26, 2010, respondent sent petitioner a supplemental notice of determination sustaining the NFTL. The letter also stated that the offer-in-compromise was withdrawn because of failure to comply with the payment terms.

## OPINION

### I. Standard of Review

Section 6320(a) and (b) provides that a taxpayer shall be notified in writing by the Commissioner of the filing of a notice of Federal tax lien and provided with an opportunity for an administrative hearing. An administrative hearing under section 6320 is conducted in accordance with the procedural requirements of section 6330. Sec. 6320(c).

If an administrative hearing is requested in a lien or levy case, the hearing is to be conducted by the Appeals Office. Secs. 6320(b)(1), 6330(b)(1). At the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The taxpayer may raise any relevant issue with regard to the Commissioner's intended collection activities,

including spousal defenses, challenges to the appropriateness of the proposed levy, and alternative means of collection. Sec. 6330(c)(2)(A); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). Taxpayers are expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing. Secs. 301.6320-1(e)(1), 301.6330-1(e)(1), Proced. & Admin. Regs.

If a taxpayer's underlying liability is properly at issue,[7] the Court reviews any determination regarding the underlying liability de novo. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182. We review any other administrative determination regarding the proposed collection action for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182.

If raised at or before the Appeals hearing by the taxpayer, a taxpayer's underlying liability is properly at issue if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to

---

[7]The parties stipulated that the underlying tax liabilities for 2000 and 2002 are not in dispute. However, the Court is not bound to stipulations as to matters of law, especially when the stipulations are erroneous. King v. United States, 641 F.2d 253, 258 (5th Cir. 1981); Greene v. Commissioner, 85 T.C. 1024, 1026 n.3 (1985).

dispute such tax liability." Sec. 6330(c)(2)(B). Under section 6330(d)(1) a taxpayer's underlying tax liability is "any amounts owed by a taxpayer pursuant to the tax laws", including assessed additions to tax. Katz v. Commissioner, 115 T.C. 329, 339 (2000). Petitioner challenged respondent's assessed additions to tax. Petitioner did not receive a statutory notice of deficiency.[8] Respondent has not shown, indicated, or alleged that petitioner had an opportunity to dispute the tax liabilities. Consequently, these underlying liabilities are properly at issue. See sec. 6330(c)(2)(B).

## II. Review De Novo

Petitioner requested relief as it relates to the assessed additions to tax pursuant to sections 6651(a)(1) and (2) and 6654(a) on the grounds of reasonable cause. The aforementioned sections permit relief from assessed additions to tax when it is shown that the taxpayer's failure to comply was due to reasonable cause and not willful neglect.[9] See sec. 6651(a)(1) and (2).

---

[8]Inasmuch as petitioner filed delinquent tax returns for 2000 and 2002 reporting tax due of $21,958 and $20,205, respectively, respondent was authorized under sec. 6201(a) to assess said amounts without issuing a notice of deficiency. In addition, respondent was free to assess the additions to tax under secs. 6651(a)(1) and (2) and 6654 without first issuing a notice of deficiency. See sec. 6665(b).

[9]No general reasonable cause exception exists with regard to an addition to tax assessed under sec. 6654(a). Relief is available, however, pursuant to the narrow exception of sec. 6654(e)(3)(B).

The Court's standard of review on what elements must be present to constitute "reasonable cause" is de novo.  United States v. Boyle, 469 U.S. 241, 249 n.8 (1985) ("[W]hat elements must be present to constitute 'reasonable cause' is a question of law."). Whether those elements are present in a given case is a question of fact.  Id.  The burden of proving reasonable cause and lack of willful neglect rests on the taxpayer.  Id. at 244.

A.    Section 6651(a)(1):  Failure To File a Timely Return

Section 6651(a)(1) imposes an addition to tax for failure to file a timely Federal income tax return unless the taxpayer can demonstrate that such failure is due to reasonable cause and not due to willful neglect.[10]  The Code does not define reasonable cause nor willful neglect.  However, the regulations explain that reasonable cause for the failure to file a timely return exists if the taxpayer exercised ordinary business care and prudence but was unable to file his return within the time prescribed by law. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  The term "willful neglect" has been read as meaning "conscious, intentional failure or reckless indifference."  United States v. Boyle, supra at 245.

Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for tax years 2000 and

---

[10]The amount of the addition to tax is 5 percent of the amount required to be shown as tax on the return for each month or portion thereof that the delinquency continues, up to a maximum of 25 percent.  Sec. 6651(a)(1).

2002. The parties stipulated that petitioner filed late returns for both of the years at issue, filing his return for 2000 in 2006 and his return for 2002 in 2007. Petitioner was assessed a tax liability of $21,958 for 2000 and $20,205 for 2002.

Petitioner sets forth two arguments as to why he had reasonable cause and was thus excused from filing a timely return for the tax years 2000 and 2002: (1) Petitioner claims to have suffered undue financial hardship, and (2) petitioner experienced the prolonged sickness and illness of an immediate family member. Without venturing into whether petitioner actually did suffer undue financial hardship, we reject the argument that reasonable cause due to financial hardship is a basis to abate additions to tax. Under the standard of "ordinary business care and prudence" set forth in the regulations, petitioner was not excused from timely filing even if he would have been unable to pay. One's ability to pay a tax liability has no bearing on the ability to file one's tax return. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Ordinary business care and prudence required petitioner to file his return timely and address the inability to pay the liability as a separate issue.

Petitioner also alleges reasonable cause because of prolonged sickness and illness of an immediate family member. In the Ninth Circuit, where this case would be appealable absent a stipulation to the contrary, a taxpayer's or a member of his immediate

family's serious illness can constitute reasonable cause.  Van Camp & Bennion v. United States, 251 F.3d 862, 867 (9th Cir. 2001); see United States v. Boyle, supra at 243 n.1; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  The Court of Appeals for the Seventh Circuit has determined that "the type of illness or debilitation that might create reasonable cause is one that because of severity or timing makes it virtually impossible for the taxpayer to comply--things like emergency hospitalization or other incapacity occurring around tax time."  Carlson v. United States, 126 F.3d 915, 923 (7th Cir. 1997).

Petitioner provided some medical billing records of his former wife, who he was married to during the tax years at issue. The records indicate that she underwent a mastectomy in the end of April 2002 and then possibly had reconstructive surgery related to the mastectomy in July 2002.[11]  When determining whether a taxpayer had reasonable cause due to serious illness of an immediate family member we consider whether "tax duties were attended to promptly when the illness passed".  Internal Revenue Manual pt. 20.1.1.3.2.2.1(3)(G) (Nov. 25, 2011).  We sympathize with petitioner and his former wife regarding her previous health problems.  However, the two procedures occurred approximately 1

---

[11]Petitioner's former wife's treatments for cancer did not begin until 1 year after his 2000 Federal income tax return was due, and therefore did not constitute reasonable cause for his failure to timely file the return for the 2000 tax year.

year and 8 months, respectively, before the filing deadline that petitioner missed.

Even if we give petitioner the benefit of the doubt that his former wife's ailments precluded the timely filing of his 2002 tax returns by April 15, 2003, petitioner did not file his 2002 tax return until October 2007, more than 5 years after his former wife's last procedure.  Petitioner was required to promptly file his return for 2002 once his former wife's illness had passed; petitioner offered no evidence to show that his former wife was still ailing until October 2007.  We also note that petitioner did not attempt to comply with his duty to timely file his 2002 Federal income tax return by requesting an extension of time to file.

During this time petitioner still managed to conduct the rest of his financial affairs with ordinary business care and prudence, such as paying his mortgage on time.  He was also able to perform the essential functions of his day-to-day activities, including going to work and making an income in excess of $100,000 during the 2002 tax year.  See Wright v. Commissioner, T.C. Memo. 1998-224, affd. without published opinion 173 F.3d 848 (2d Cir. 1999).  We conclude that petitioner has failed to establish reasonable cause to abate the addition to tax pursuant to section 6651(a)(1) for 2000 or 2002.

B.    Section 6651(a)(2):  Failure To Pay Amount of Tax

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount of tax shown on the taxpayer's Federal income tax return on or before the payment due date, unless such failure is due to reasonable cause and not due to willful neglect.[12]  A failure to pay will be considered due to reasonable cause if the taxpayer makes a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer undue hardship if he paid on the due date.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Petitioner asserts the same reasonable cause arguments for section 6651(a)(2) as he did for section 6651(a)(1)--undue financial hardship and the prolonged illness of an immediate family member.

In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation.  Van Camp & Bennion v. United States, supra at 867.  For the same reasons we found that

_____

[12]The sec. 6651(a)(2) addition to tax is 0.5 percent of the amount of tax shown on the return, with an additional 0.5 percent per month during which the failure to pay continues, up to a maximum of 25 percent.  The 5-percent failure to file penalty is reduced to 4.5 percent for any month that the failure to pay penalty is also assessed.  Sec. 6651(c).

petitioner failed to show reasonable cause for failing to file his Federal returns on time, petitioner has failed to show that he exercised ordinary business care and prudence in failing to pay his tax liabilities for 2000 and 2002 on time.

Petitioner cannot rely on undue financial hardship alone to excuse his inability to pay taxes.  The regulations require a showing of reasonable cause even if undue hardship would be suffered.  As the District Court noted in Wolfe v. United States, 612 F. Supp. 605, 608 (D. Mont. 1985), affd. 798 F.2d 1241 (9th Cir. 1986), opinion amended, 806 F.2d 1410 (9th Cir. 1986): "Almost every non-willful failure to pay taxes is a result of financial difficulties."  We conclude that petitioner is liable for the section 6651(a)(2) addition to tax for 2000 and 2002.

C.    Section 6654(a):  Failure To Pay Estimated Tax

Section 6654(a) imposes an addition to tax for the underpayment of any installment of estimated tax.[13]  The underpayment addition rate is determined pursuant to section 6621 and is applied to the amount of the estimated tax underpayment for the period of underpayment.  Sec. 6654(a) and (b).  Except for the narrow circumstances provided for in section

---

[13]Sec. 6654(c)(1) requires the payment of four installments of a taxpayer's estimated tax liability for each taxable year. Each required installment of estimated tax is equal to 25 percent of the required annual payment.

6654(e)(3)(A) and (B), no reasonable cause exception exists to the section 6654(a) addition to tax.

The narrow exceptions to section 6654(a) provide that an addition to tax will not be imposed if the Secretary determines that (1) By reason of casualty, disaster, or unusual circumstances the additions assessed would be inequitable or unfair or; (2) the taxpayer retired (after reaching age 62) or became disabled in either the taxable year for which estimated tax payments were required or in the taxable year preceding such year and such underpayment was due to reasonable cause and not willful neglect.

Petitioner asserts the same reasonable cause arguments for section 6654(a) as he did for section 6651(a)(1) and (2). Petitioner did not introduce any evidence that he was retired, nor did he put forth any evidence that he was disabled. Therefore he does not fall into the narrow exception for reasonable cause pursuant to section 6654(e)(3)(B). The record does not establish that petitioner's failure to make estimated tax payments for 2002 was due to casualty, disaster, or other unusual circumstances, and we are not persuaded that the imposition of the section 6654 addition to tax would be against equity and good conscience. We conclude that petitioner is liable for the section 6654 addition to tax for 2002.

D.    Offer-in-Compromise

Petitioner submitted an offer-in-compromise based on doubt as to collectability during the face-to-face conference on August 20, 2009.  The offer-in-compromise was a 24-month short-term periodic payment offer made pursuant to section 7122(c)(1)(B). The payment offer required petitioner to make monthly payments of $272.66.  Pursuant to section 7122(c)(1)(B)(i) petitioner submitted payment of the first installment with the offer-in-compromise.

Section 7122(c)(1)(B)(ii) required petitioner to make regular payments during the period respondent was evaluating the offer-in-compromise.  Petitioner failed to make continuous payments beginning in January 2010.  In late March of 2010 petitioner made his January and February payments after being notified by Officer Conley that a failure to pay would result in the offer-in-compromise's being deemed withdrawn by petitioner.

Petitioner subsequently failed to make timely payments for March, April, and May 2010.  Once again Officer Conley sent a letter to petitioner notifying him of the consequences of a failure to pay and to adhere to the terms of his offer-in-compromise.  Petitioner responded by sending in only one payment for the month of March.  We conclude that pursuant to section 7122(c)(1)(B)(ii), petitioner's continued payment noncompliance

was permissibly treated by respondent as a withdrawal by petitioner of his offer-in-compromise.

III. Conclusion

As detailed above petitioner is liable for the sections 6651(a)(1) and (2) and 6654(a) additions to tax. Further, respondent did not abuse his discretion in rejecting petitioner's offer-in-compromise. Therefore, the notice of determination respondent issued to petitioner dated June 2, 2008, is sustained in its entirety.

To reflect the foregoing,

Decision will be entered

for respondent.